■ Rosa Rivera, Appellant, v City of New York et al., Respondents, et al., Defendant. [677 NYS2d 537] —Judgment, Supreme Court, Bronx County (Hansel McGee, J., and a jury), entered June 5, 1996, dismissing the complaint against defendants City of New York and Filippo Logiudice and awarding plaintiff the principal sum of $35,100 against defendant Arguinzoni as administratrix of the estate of Eddie Mercado, unanimously reversed, on the law and the facts, without costs, and the matter remanded for a new trial on all issues.

Shortly after midnight on September 11, 1991, plaintiff was a passenger in a car driven by Eddie Mercado when it struck a New York City Sanitation Department truck driven by Filippo Logiudice at the intersection of 135th Street and Alexander Avenue in the Bronx. Mercado died at the scene of the accident, and plaintiff, a 30-year-old single mother of four, was rendered a paraplegic as a result of her injuries.

As is relevant to this appeal, the following testimony was adduced at trial. Logiudice, who began his shift at midnight, had just gotten off the Bruckner Expressway, driving 50 miles per hour, and was proceeding along 135th Street. According to his trial testimony, he was driving at a speed of "about 30 miles an hour" as he approached the intersection of Alexander Avenue; in prior statements, he had estimated his speed to be between 35 and 40 miles per hour. Logiudice testified that he was looking straight ahead as he approached the intersection so that he would have peripheral vision both to the left and the right, that he had a green light and that he did not see the Mercado vehicle approaching from the right on Alexander Avenue.

According to plaintiff, the light was green in Mercado's favor as they approached the intersection. However, realizing that the car was going to hit the sanitation truck, she closed her eyes the moment before the actual impact. Logiudice did not realize that he had been hit by another vehicle; he thought he had gone over a bump. Upon impact, the truck veered to the left and Logiudice lost control of the vehicle; it traveled over a hundred feet before coming to a stop. Logiudice was able to get out of the truck and walked back toward the intersection; it was not until a bystander pointed out the Mercado vehicle, which was virtually destroyed, that he realized he had been hit by a car.

Albert Rosario testified for the plaintiff that, from his second

floor apartment window overlooking Alexander Avenue, he saw the sanitation truck approach the intersection at a speed of over 40 miles per hour with a solid red "don't walk" sign facing the oncoming truck. He did not see the accident, but went down to the street immediately afterwards. Marisol Baez, called by the City, was standing at the public phone on the corner of the intersection, when she saw Mercado's car speed up to approximately 40 miles per hour as the light turned yellow; she testified the light was already red against him when Mercado entered the intersection, having turned red when he was "in the crosswalk." This would mean that as Logiudice was approaching the intersection, *he* had a red light; according to Logiudice, he had maintained his speed without applying his brakes at any point.

Two medical examiners testified that, according to Mercado's blood-alcohol level at the time of the accident, he was "grossly intoxicated," and it would have been apparent to a sober observer that he was in no condition to drive. With respect to the question of intoxication on the part of plaintiff and Logiudice, the court made the following rulings, both of which are at issue on this appeal. At the outset of trial, the City's counsel successfully moved to preclude Rosario from testifying that he had smelled alcohol on Logiudice's breath when he spoke to him immediately after the accident. According to Logiudice's deposition, he had consumed only one beer with dinner six hours before the accident, and two breathalyzer tests at the hospital after the accident showed a zero blood-alcohol level. Contrary to his testimony at trial as to when the tests had been administered, however, the evidence showed that the first was given only at 3:19 A.M., and the second at 4:25 A.M., both hours after the accident. The City argued that, given the results of the tests, Rosario's testimony about smelling alcohol on Logiudice's breath, without more, would be unduly prejudicial and cause the jury to speculate. Plaintiff argued that, due to the lapse in time, the test results were, at best, inconclusive. The court took issue with this argument, admonishing plaintiff's counsel that it was well aware "that alcohol remains in the body for a long time."

Later, the court denied plaintiff's application to redact from plaintiff's hospital records a reference to "A.O.B" (alcohol on breath) and a reference to "E.T.O.H. on board" (ethanol, or alcohol), rejecting her counsel's argument that, particularly in light of the preclusion of Rosario's testimony regarding Logiudice's drinking, these references would be unduly prejudicial to plaintiff. In light of the court's denial, however, plaintiff later

made another attempt to have Rosario's precluded testimony admitted. Once Rosario was called to the stand, plaintiff made an offer of proof in this regard, consisting of Rosario's testimony, outside the hearing of the jury, as to his observations and contact with Logiudice after the accident. The court adhered to its prior ruling precluding this evidence.

The jury's verdict, and its vote on each question, was as follows: the City and Logiudice were not negligent (5-1); Mercado was negligent (unanimous); Mercado's negligence was a proximate cause of the accident (5-1); plaintiff was also negligent (unanimous); and her negligence was a proximate cause of the accident (5-1). Specifically, the jury found Mercado and plaintiff each 50% liable. It awarded plaintiff $2,600 for future medical expenses for one year; $2,500 for two years of therapy; $100 for medical supplies for 46 years; $15,000 for home care for seven years; $5,000 for home equipment for one year; $45,000 for future pain and suffering for one year. It awarded her nothing for past medical expenses or past pain and suffering, future medication or future lab work.

Plaintiff moved orally to set aside the jury verdict. Among numerous claims, plaintiff cited conversations between the jurors and the attorneys (and overheard by the court) following the verdict in which the jurors admitted that they had in fact found Logiudice negligent but had not checked the relevant box to that effect on the verdict sheet. In addition, in view of the evidence that Logiudice had been speeding—a fact that the City did not contest at trial—plaintiff contended that the verdict was against the weight of the evidence. Plaintiff also maintained that the damages were inadequate in light of the severity of her injuries. The court denied the motion orally, then recalled and reserved its decision pending written submissions. Upon considering the parties' written arguments, the court adhered to its prior rulings in a written decision in all respects except one: it granted plaintiff's motion for a new trial as to damages unless the parties stipulated to a settlement of $500,000. No such stipulation took place, no appeal was taken from this order, and, curiously, the judgment entered does not direct a new trial on damages but provides for the award as specified in the verdict.

We do not find that the verdict itself as to the question of defendants' negligence is irrational or against the weight of the evidence, as plaintiff urges primarily because of the uncontested evidence that Logiudice was exceeding the speed limit; the jury could reasonably have concluded that, despite this fact, his conduct did not cause or contribute to the accident, in

which the other driver was "grossly intoxicated," exceeded the speed limit and failed to heed a yellow or red light. However, we do find that the damages awarded are irreconcilably inconsistent and indicate that the verdict represents an impermissible compromise on the part of the jurors in arriving at the award. Accordingly, we reverse and remand for a new trial on all issues.

There was no question that plaintiff suffered severe and extensive injuries, leaving her seriously incapacitated. With continued therapy and significant weight loss (she weighed 230 pounds at the time of the accident), the most hopeful prognosis was that, eventually, she might be able to walk with braces. Nevertheless, five years after the accident, the jury awarded plaintiff nothing for past medical expenses, past pain and suffering, future medication and future lab work. It provided for only one year of future pain and suffering and medical expenses, and, as for therapy, medical supplies, home care and home equipment, it awarded her widely varying sums for varying periods of time, from one to 46 years.

Where liability is sharply contested and plaintiff's injuries are serious, as here, an inexplicably low award for such injuries makes it "most likely" that the jury has rendered a compromise verdict (*Farmer v A & T Bus Co.*, 96 AD2d 783, *appeal dismissed* 61 NY2d 670). That is, "in addition to finding plaintiff partially responsible for the accident, the jury also compromised on liability and damages by finding the total amount of plaintiff's injuries much too low" (*Woods v J. R. Liqs.*, 86 AD2d 546, 547; *see also, Patrick v New York Bus Serv.*, 189 AD2d 611, 612). Where the award suggests the likelihood of such a "trade-off," a new trial is required on all issues (*supra*, at 612; *Farmer v A & T Bus Co.*, 96 AD2d 783, 784, *supra*). While the low award for future medical expenses might be explained by evidence that plaintiff failed to continue her physical therapy or visit her doctors, in every other respect—most particularly the failure to make any award for past pain and suffering while awarding only one year future pain and suffering—the award is not only minimal but inconsistent, suggesting that it reflects such an impermissible compromise (*see, e.g., Schaefer v RCP Assocs.*, 232 AD2d 286; *Torres v City of New York*, 226 AD2d 701; *Sheffield v New York City Hous. Auth.*, 200 AD2d 369).

In addition to this ground for reversal, we also find, *inter alia*, that the trial court erred in precluding Rosario's testimony that he had smelled alcohol on Logiudice's breath immediately after the accident. A lay witness is competent to testify that a

person appears to be intoxicated when such testimony is based on personal observation and consists of a description of the person's conduct and speech (*see, Ryan v Big Z Corp.*, 210 AD2d 649, 651). Here, Rosario's testimony did not consist of a conclusory statement that Logiudice was or appeared to be intoxicated; rather, his testimony, offered outside the hearing of the jury, was that Logiudice's speech was somewhat incoherent or irrational; that Logiudice was "wobbling," and that, during their conversation, Rosario "got a smell" of beer on Logiudice's breath. Thus, his testimony consisted of conduct and speech, not just the mention of the odor of alcohol. Moreover, the favorable breathalyzer results should not have insulated Logiudice and the City from the admission of Rosario's testimony, when, despite the court's pronouncement of its personal knowledge on this issue, the lapse of time was significant and could have affected the test results. Thus, Rosario's testimony should have been admitted, and the jury should have been permitted to consider the evidence on this issue.

We further note that it was not an abuse of discretion to allow Marisol Baez to testify, notwithstanding the fact that the City did not disclose her name in response to plaintiff's demand for a witness list. The nondisclosure was not willful (*Gomez v New York City Hous. Auth.*, 217 AD2d 110, 114), and Baez was located at the very address listed on a police report that had been provided to plaintiff, although at one point the City believed, and communicated to plaintiff, that it was a false address. Moreover, in contrast to those cases where a party is surprised by the production of a witness in the midst of trial (*see, e.g., Colon v Futterman*, 222 AD2d 548), the City announced its intention to call Baez as a witness at the outset of trial, and plaintiff did not seek any remedy such as a continuance for deposition (*see, Locastro v Horn*, 138 AD2d 358). Concur—Milonas, J. P., Rosenberger, Ellerin and Andrias, JJ.