OPINION OF THE COURT
Dianne T. Renwick, J.
*705 Plaintiff Jose L. Guarneros commenced this action seeking to recover money damages for personal injuries sustained at a construction site. After a trial presided over by this court, the jury rendered a verdict on liability in favor of plaintiff and against defendant Green 286 Madison, LLC. The jury then awarded plaintiff a relatively small amount of damages for past pain and suffering, and zero for future pain and suffering. In contrast, the jury awarded plaintiff damages for past and future medical expenses exceeding one million dollars. Plaintiff now moves pursuant to CPLR 4404 and 5501, for a partial new trial on damages. Defendant cross-moves, pursuant to CPLR 4404, for an entirely new trial on both damages and liability.
Factual and Procedural Background
This action stems from a construction site accident that took place when plaintiff fell from a sidewalk bridge at the premises owned by defendant Green 286 Madison, LLC. In early 1999, the owner hired Arrow Restoration to perform renovation work on the property located on Madison Avenue, between 40th and 41st streets, New York, New York. The general contractor then hired plaintiffs employer, APA Restoration, to work on the renovation of the facade of the building. To facilitate the job, the owner hired Rockledge Scaffold Corp. to install a scaffold in the form of a sidewalk bridge around the perimeter of the building. The sidewalk bridge (about 16 feet above the sidewalk level) was constructed both of steel and lumber. The frame of the bridge was made of steel. On top of it were large wood planks, which formed the walking platform. Along the side were two additional wood planks about 3½ to 4 feet tall. The sidewalk bridge also contained a “catch all” screen to protect pedestrians from falling objects. It was made of “netting” placed over the facade and over portions of the sidewalk bridge. The “netting” was supported by pieces of wood boards of about 10 inches wide, running along the wooden floor toward the curb side of the platform.
Two Conflicting Versions of the Accident
At trial, the parties presented two conflicting versions as to the cause of the sidewalk bridge accident. On the one hand, plaintiff Guarneros claimed that his fall was due to the defective sidewalk bridge. Guarneros’ version is supported almost entirely by his own testimony. Guarneros testified that on November 19, 1999, he was working, transporting bricks to the top levels of the building. A man-operated crane retrieved bricks *706 from a truck and placed them onto the sidewalk bridge. Plaintiff was on the sidewalk bridge guiding the crane operator to the proper place for the bricks. Once placed on the bridge, the bricks were manually retrieved and placed on a pulley, which transported the bricks to the upper floors. Before the accident, plaintiff had just finished placing bricks on the pulley. While walking back to retrieve more bricks, plaintiff heard a coemployee on an upper floor trying to get his attention. When plaintiff took a step backward, to get a view of the person who was trying to get his attention, plaintiffs feet got caught on a loose floor plank. He then lost his balance. He fell over the bridge, past the “catch all” screen, and onto the sidewalk.
Defendant presented a different version of the fall, attributing it to the negligent conduct of plaintiff. Defendant’s version was supported primarily by the testimony of Alex Zurita, who worked together with plaintiff in the renovation project. Zurita testified that plaintiff fell because he misused the sidewalk bridge. Specifically, plaintiff climbed over the four-foot-tall wall of the sidewalk bridge and onto the narrow wood board that supported the “catch all” screen. At the time, Guarneros was attempting to get a glimpse of the clock mounted to a nearby building, when he lost his balance and fell to the street below the bridge. This version of the accident was supported by the testimony of Mike Morano, the project manager on the job site for the general contractor, Arrow Construction. Morano testified that he inspected the sidewalk bridge immediately after the accident and found nothing wrong with any of the wooden floor planks.
Medical Expert Testimony on Damages
At trial, plaintiff presented numerous medical experts, including two treating physicians (David Valderrama and Jeffrey Kaplan, neurologists), and David Milbauer (a radiologist). According to the medical experts, plaintiff sustained a fracture of the Cl vertebrae which caused a dislocation that healed in an abnormal position (a shifting of the lateral mass). Plaintiff also sustained a fracture of the temporal bone, and a compression fracture of the T3-T4 vertebrae in the thoracic area, which permanently left the spinal cord bent. The medical experts diagnosed plaintiff as currently suffering from nerve root damage (radiculopathy) of both the cervical and lumbar spines, which account for his recurrent pain, numbness and restricted range of motion. The experts recommended pain medication, physical therapy, and *707 surgery (fusion) as the last resort. The experts opined that plaintiffs condition is permanent based upon its existence four years after the accident. Conversely, defendant’s expert, Dr. Maurice Carter, an orthopedist, testified that plaintiffs subjective complaints of pain are not supported by any objective medical findings and that any injury which plaintiff might have sustained is transitory, occasional and insignificant.
Jury Verdict and Posttrial Motions to Set Aside the Verdict
The court submitted to the jury a verdict sheet with itemized questions on liability and damages. The jury rendered a verdict on liability in favor of plaintiff and against defendant owner (Green 286 Madison, LLC), finding that “the failure to construct, place, operate or maintain the sidewalk bridge so as to give proper protection to plaintiff was a substantial factor in causing his injuries.”[1] On damages, the jury awarded plaintiff $50,000 for past pain and suffering and zero for future suffering. In contrast, the jury awarded damages of $475,000 for past medical expenses and $750,000 for future medical expenses for a period of 25 years. Plaintiff now submits a posttrial motion, pursuant to CPLR 4404 and 5501, for a court order to set aside the jury verdict on damages and a partial new trial on damages. Defendant cross-moves, pursuant to CPLR 4404, for an entirely new trial on both damages and liability.
Discussion
A jury verdict may not be set aside merely because the trial judge would have decided the issues differently; there must be some indication of irregularity. Pursuant to CPLR 4404 (a), a trial court has broad powers to set aside a jury verdict “where the verdict is contrary to the weight of the evidence.” The standard for setting aside a verdict is “whether the evidence so preponderate[d] in the [movant’s] favor that the verdict could not have been reached upon any fair interpretation of the evidence.” (Roseingrave v Massapequa Gen. Hosp., 298 AD2d 377, 379-380 [2d Dept 2002], citing Nicastro v Park, 113 AD2d 129 [2d Dept 1985].) Similarly, a trial court may set aside a jury award of damages as inadequate or excessive pursuant to CPLR 5501 (c), where the court finds that such award “deviates materially from what would be reasonable compensation.” Although CPLR 5501 (c) expressly addresses the Appellate *708 Division’s authority to overturn a jury’s damage verdict, its “material deviation” standard has been applied to trial courts as well. (See, Ashton v Bobruitsky, 214 AD2d 630, 631 [2d Dept 1995]; Inya v Ide Hyundai, 209 AD2d 1015 [4th Dept 1994]; Cochetti v Gralow, 192 AD2d 974, 975 [3d Dept 1993]; Shurgan v Tedesco, 179 AD2d 805 [2d Dept 1992].)
In this case, where the jury awarded a low amount for past and nothing for future' pain and suffering, both parties agree that such damage awards should be set aside as inherently inconsistent with what it awarded for past and future medical expenses ($1,225 million). Indeed, courts have consistently held that a verdict that awards compensation to a plaintiff for his or her medical expenses or other special damages but that fails to award compensation for pain and suffering is improper where, like here, the plaintiff’s physical injuries safely could be assumed to have resulted from the accident from which liability was found. (See e.g., Ciatto v Lieberman, 1 AD3d 553 [2d Dept 2003]; Gillespie v Girard, 301 AD2d 1018 [3d Dept 2003]; Roseingrave v Massapequa Gen. Hosp., 298 AD2d 377 [2d Dept 2002].) For instance, in Califano v Automotive Rentals (293 AD2d 436 [2d Dept 2002]), where the plaintiff sought damages for personal injuries sustained during an automobile accident, the appellate court reversed the trial court’s denial of the plaintiff’s motion for a new trial on damages. The Second Department reasoned that by granting damages for medical expenses and loss of earnings, the jury’s failure to award damages for pain and suffering was contrary to the evidence, deviated from what would be reasonable compensation, and represented a compromise. (Id.) Thus, there is no question that the verdict on damages cannot stand in this case.
What the parties disagree on is whether this court should order an entirely new trial both on liability and damages or a partial trial on damages only. CPLR 4404 specifically empowers a trial court to grant a partial new trial after the verdict. The court is given discretion to order an entire or partial new trial when a finding as to a cause of action or a separate issue is erroneous. (Browne v Pikula, 256 AD2d 1139 [4th Dept 1998]; Creative Inception v Andrews, 50 AD2d 553 [1st Dept 1975].) Where liability and damages are not intertwined or a result of a “trade-off’ of a finding of liability in return for a compromise on damages, the courts are empowered to limit the new trial to the issue of damages. (Figliomeni v Board of Educ., 38 NY2d 178, 182 [1975]; see e.g., Zinman v Church Charity Found, of *709 Long Is., 175 AD2d 833 [2d Dept 1991]; Hogue v Wilson, 51 AD2d 424 [4th Dept 1976].) Conversely, where an inadequate verdict could only have resulted from an improper compromise, there must be a new trial on both issues of liability and damages. (Figliomeni v Board of Educ., 38 NY2d 178 [1975]; see e.g., Rainbow Food Corp. v Tasty Donut, 180 AD2d 721 [2d Dept 1992]; Farmer v A & T Bus Co., 96 AD2d 783 [1st Dept 1983]; Fardys v Urbinati, 78 AD2d 835 [1st Dept 1980].)
The Appellate Division, First Department, has found one particular set of circumstances indicating an impermissible compromise verdict that vitiates the whole trial. Specifically, the First Department has consistently held that where the issue of liability was sharply and substantially contested and the jury rendered an inexplicably low verdict award on damages, the whole trial is vitiated as an impermissible compromise verdict on liability and damages. (See e.g. Rivera v City of New York, 253 AD2d 597 [1st Dept 1998]; Patrick v New York Bus Serv., 189 AD2d 611 [1st Dept 1993]; Farmer v A & T Bus Co., 96 AD2d 783 [1983].) For instance, in Sheffield v New York City Hous. Auth. (200 AD2d 369 [1st Dept 1994]), a personal injury action, the Appellate Division affirmed the trial court’s decision in ordering a new trial on liability and damages. In Sheffield, the issue of liability was sharply contested, defendant stipulated to serious and permanent injuries and their sequelae, and plaintiff was awarded an inadequate amount for past pain and suffering and nothing for future pain and suffering. Such circumstances, the Court held, led to the ineluctable conclusion that the jurors compromised their views on liability and damages in arriving at the agreed upon award. Likewise, in Moreno v Thaler (255 AD2d 195 [1st Dept 1998]), the Court held that “in view of the sharply conflicting evidence on the issue of causation, plaintiffs serious injury and the jury’s inexplicably low award therefor, it was highly likely that the verdict was a compromise verdict, and properly directed a new trial on all issues.” (Id. at 196.) Thus, the First Department’s view is abundantly clear that an impermissible compromise verdict on liability and damages vitiates the whole trial.
The circumstances of this case suggest the same likelihood of such an impermissible compromise verdict on liability and damages. First, the liability issues during the trial were sharply contested. Indeed, as fully explained above, the parties presented eyewitnesses who provided conflicting versions as to the cause of plaintiffs fall from the sidewalk bridge. While plaintiff *710 testified that the cause of the fall was due to the defective sidewalk bridge, the witness for defendant testified that the cause was due to plaintiffs own negligence of the improper use of the sidewalk bridge. Second, defendant never disputed the causal connection between plaintiffs injuries and the accident. In fact, because it awarded damages for past pain and suffering, the jury must have concluded that plaintiff was injured as a result of the accident. What defendant seriously disputed was the severity of plaintiffs injuries. The jury, however, must have thought that the injuries were serious enough to require extensive medical attention as suggested by the extravagant award for past and future medical expenses. Under the circumstances, the jury’s combined award for past and future pain and suffering was not only relatively minimal but inconsistent with the large award for past and future medical expenses.[2] These facts suggest the strong likelihood that the jury verdict was an impermissible compromise on all issues of liability and damages, warranting an entirely new trial, rather than a partial trial on damages only. (Cf. Sheffield v New York City Hous. Auth., supra; Moreno v Thaler, supra; Patrick v New York Bus Serv., supra; Farmer v A & T Bus Co., supra.)
This court, however, is cognizant of the fact that the Appellate Division, Second Department, has a contrary view as to whether an entirely new trial is required under the circumstances akin to this case. (See e.g., Roseingrave v Massapequa Gen. Hosp., supra; Ciatto v Lieberman, supra; Gillespie v Girard, supra.) For instance, in Roseingrave v Massapequa Gen. Hosp. (298 AD2d 377 [2d Dept 2002]), a medical malpractice action, the Second Department ruled that the trial court should have granted plaintiffs motion to set aside the verdict on the issue of damages. The Court reasoned that the jury’s determination that the patient was not entitled to any damages for past medical expenses or lost earnings was inconsistent with its findings that the surgeon was liable for removing an excessive portion of the patient’s intestine, and its award of damages for past and future pain and suffering. Like here, the Court found that because the issue of liability was hotly contested and the award for pain and suffering was inexplicably low, it appeared as if the award of damages might have been the result of an impermissible compromise. The appellate court, however, ordered only a partial new trial on damages, in direct contravention to the *711 First Department, which, as noted above, has consistently granted an entirely new trial under similar circumstances. (Compare, Sheffield v New York City Hous. Auth., supra, Rivera v City of New York, supra, Moreno v Thaler, supra, Patrick v New York Bus Serv., supra, and Farmer v A & T Bus Co., supra, with Roseingrave v Massapequa Gen. Hosp., supra, Ciatto v Lieberman, supra, and Gillespie v Girard, supra.)
Consequently, in this action, this court is constrained to adhere to the pronouncement of the First Department. The general rule is that inferior courts must follow applicable decisions of the Appellate Division in its department, where the Court of Appeals has not established a precedent on an issue. This concept is founded upon the bedrock principle of stare decisis (Mountain View Coach Lines v Storms, 102 AD2d 663 [2d Dept 1984]; People v Brisotti, 169 Misc 2d 672 [App Term, 1st Dept 1996]; People v McMurty, 141 Misc 2d 510 [1987], affd 174 AD2d 988 [4th Dept 1991]; Josephson v Josephson, 121 Misc 2d 572 [Sup Ct, NY County 1983]), and “the fact that there is in New York State but one Appellate Division, albeit divided into four Departments.” (Reyes v Sanchez-Pena, 191 Misc 2d 600, 606 [Sup Ct, Bronx County 2002].)
Conclusion
In sum, the jury’s minimal award for past pain and suffering and zero award for future pain and suffering were inconsistent with its large awards for past and future medical expenses. In light of the sharply contested issues on liability and the inexplicably low jury award for past and future pain and suffering vis-á-vis the large award for past and future medical expenses, it appears that the jury’s verdict was an impermissible compromise on liability and damages. Under the circumstances, this court must order a new trial both on liability and damages, pursuant to case precedent from the Appellate Division, First Department, which has consistently held that a jury’s impermissible compromise on liability and damages vitiates the whole trial, not just the damages verdict.

. The claims against the codefendants were dismissed by the court during the trial, before the case reached the jury.

. Furthermore, the draconian award for past and future medical expenses went beyond what was adduced at trial.