Quiroz v Memorial Hosp. for Cancer & Allied Diseases (2022 NY Slip Op 01130)





Quiroz v Memorial Hosp. for Cancer & Allied Diseases


2022 NY Slip Op 01130


Decided on February 22, 2022


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: February 22, 2022

Before: Gische, J.P., Webber, Mendez, Rodriguez, Pitt, JJ. 


Index No. 161136/17 Appeal No. 15141 Case No. 2021-02236 

[*1]Jose Alfonso Perez Quiroz, Plaintiff-Appellant,
v
Memorial Hospital for Cancer and Allied Diseases et al., Defendants-Respondents.


William Schwitzer & Associates, P.C., New York (D. Allen Zachary of counsel), for appellant.
DOPF, P.C., New York (Martin B. Adams of counsel), for respondents.



Order, Supreme Court, New York County (Arlene P. Bluth, J.), entered February 24, 2021, which, to the extent appealed from as limited by the briefs, denied plaintiff's motion for partial summary judgment on the issue of defendants' liability on his Labor Law § 240 (1) claim and granted defendants Memorial Hospital for Cancer and Allied Diseases, and Turner Construction Company's cross motion for summary judgment dismissing his Labor Law § 241 (6) claim predicated on a violation of 12 NYCRR (Industrial Code) § 23-5.1 (f), unanimously reversed, on the law, without costs, as to plaintiff's motion, and the motion granted, and appeal therefrom otherwise dismissed, without costs, as academic. 
The verified complaint alleges that on September 20, 2017, plaintiff was injured while performing construction work at 524-530 East 74th Street in Manhattan. Defendant Turner Construction Company was hired by codefendant Memorial Hospital for Cancer and Allied Diseases as the general contractor for construction of a new building on the premises. Turner Construction Company hired plaintiff's employer, nonparty Pinnacle Industries II LLC (Pinnacle), as a subcontractor for construction work on the building. Plaintiff asserts causes of action for common-law negligence and violations of Labor Law §§ 200, 240 (1), and 241 (6).
After filing his verified complaint, plaintiff served a notice of discovery and inspection and combined demands upon defendants. The demands included that defendants identify and provide the name and address of any person claimed to be a witness to the occurrence, or any acts, omissions, or conditions that allegedly caused the occurrence, and/or anyone who had first-hand knowledge of any condition of the site of the occurrence. Defendants served a response to plaintiff's demand claiming that they were unaware of any potential witnesses.
Thereafter, prior to filing a note of issue, plaintiff moved for summary judgment as to liability on his Labor Law § 240 (1) claim. In response, defendants cross-moved for summary judgment on all of plaintiff's claims.
The following facts are uncontested. Plaintiff received instructions and directions for the project from his foreman, "Danny" Labarbera (Labarbera). On the day of the accident, Labarbera instructed plaintiff to use a chipping gun to flatten a wall next to a doorway. Labarbera told plaintiff to work on a pipe scaffold and to flatten the wall as high as he could reach from the scaffold. Of note, the scaffold was already constructed and in place when plaintiff arrived at the location of the work. After plaintiff climbed the scaffold and began using the large chipping gun on the wall, he could feel the scaffold moving "backwards and forwards" beneath his feet. Plaintiff tried stabilizing himself by moving his foot back, but the movement of the scaffold and the small, uneven plywood boards upon which he was standing caused him to lose his balance and fall backwards onto the concrete below. There were [*2]no witnesses to the accident.
Plaintiff testified that the morning of the accident was the first time he saw the scaffold. He stated that he never had any role in putting together a scaffold because that was not his job and that he never saw other Pinnacle workers assembling scaffolds. Additionally, he "wasn't paying attention" as to whether there was any fall protection equipment in the shanty where the masons kept their equipment. Plaintiff testified that the scaffold platform was made of two "unlevel, uneven," and unsecured plywood boards that were placed next to each other on the scaffold's frame, approximately 40 inches above the floor.
Plaintiff also relied on an expert affidavit by certified safety manager Kathleen Hopkins. Hopkins averred that the scaffold was required to have safety railings, but that none were built on the scaffold before plaintiff was directed to use it. She opined that plaintiff would not have fallen off the scaffold if there had been safety rails. However, in a supplemental affidavit, Hopkins contradicted her previous affidavit and instead stated that safety railings alone would not have protected plaintiff from his fall.
In opposition, defendants relied upon an affidavit and statement by Labarbera. He averred that safety railings were available for the scaffold and that he specifically instructed plaintiff to install them prior to beginning work. He added that Pinnacle provided those safety rails for every project site and that plaintiff would have been trained in how to install them properly.
As an initial matter, the motion court providently exercised its discretion in considering on summary judgment Labarbera's statement and affidavit, despite defendants' failure to disclose him as a witness in response to plaintiff's discovery demands and the preliminary conference order. The statement and affidavit were supplied four months before the note of issue was filed and prior to two discovery conferences at which plaintiff could have requested additional discovery, including the foreman's deposition, but failed to do so (see Brown v Howson, 129 AD3d 570, 571 [1st Dept 2015]). Plaintiff cannot claim surprise or prejudice since he knew at all times of the presence at the job site of his own foreman, who was identified by name, by plaintiff and his counsel, at plaintiff's deposition (see Palomo v 175th St. Realty Corp., 101 AD3d 579, 580 [1st Dept 2012]; Pearson v City of New York, 74 AD3d 1160, 1161-1162 [2d Dept 2010]). There was no showing of willfulness on defendants' part, given counsel's undisputed assertion that his office was unaware of the identity of the foreman (a retired former employee of plaintiff's employer, which is not a party to this action) until plaintiff's deposition (see Rivera v City of New York, 253 AD2d 597, 601 [1st Dept 1998]).
Turning to the merits, the court erred in denying plaintiff's motion for summary judgment on liability under Labor Law § 240 (1). Plaintiff's unrebutted testimony establishes [*3]that the kickback of the chipping gun he was using caused the unlevel, unsecured scaffold and platform upon which he was standing to move backwards and forwards, causing him to lose his balance and fall onto the concrete floor below, proximately causing his injuries. Accordingly, plaintiff made a prima facie showing that defendants violated Labor Law § 240 (1) (see Martinez v ST- DIL LLC, 192 AD3d 511, 512 [1st Dept 2021]; Carpentieri v 309 Fifth Ave., LLC, 180 AD3d 571, 571-572 [1st Dept 2020]).
In opposition, defendants failed to raise a triable issue of fact as to the sole proximate cause of the accident. The purpose of Labor Law § 240 (1) "is to protect workers by placing ultimate responsibility for safety practices at building construction jobs where such responsibility actually belongs, on the owner and general contractor. . . instead of on workers, who are scarcely in a position to protect themselves from accident" (Rocovich v Consolidated Edison Co., 78 NY2d 509, 513 [1991] [internal citation and quotation marks removed]). Thus, the statute imposes a nondelegable duty on owners and contractors to provide "devices which shall be so constructed, placed and operated as to give proper protection to" those individuals performing the work (Montalvo v J. Petrocelli Const., Inc., 8 AD3d 173, 174 [1st Dept 2004], quoting Labor Law § 240 [1]). "Under Labor Law § 240 (1) it is conceptually impossible for a statutory violation (which serves as a proximate cause for a plaintiff's injury) to occupy the same ground as a plaintiff's sole proximate cause for the injury" (Blake v Neighborhood Hous. Servs. of N.Y. City, 1 NY3d 280, 290 [2003]). Therefore, if a violation of Labor Law § 240 (1) is a proximate cause of an injury, the plaintiff cannot be solely to blame for it (id.; see Rocovich, 78 NY2d at 513).
Defendants' attempt to refute plaintiff's prima facie case by arguing that plaintiff was a recalcitrant worker and, as such, was the sole and proximate cause of the accident is unavailing. "The controlling question . . . is not whether plaintiff was 'recalcitrant,' but whether a jury could have found that his own conduct, rather than any violation of Labor Law § 240 (1), was the sole proximate cause of his accident" (Cahill v Triborough Bridge & Tunnel Auth., 4 NY3d 35, 39-40 [2004]). Labarbera's and plaintiff's conflicting testimony as to whether plaintiff disregarded instructions and failed to install railings on the scaffolding before beginning work and Hopkins's self-contradiction about whether the railings would have protected plaintiff from his fall are only of concern for considering plaintiff's potential comparative negligence, an issue not relevant under Labor Law § 240 (1) (see Concepcion v 333 Seventh LLC, 162 AD3d 493, 494 [1st Dept 2018]). Even if there were evidence that adequate safety devices were readily available at the work site and that plaintiff knew he was expected to use them, it would not render plaintiff the sole cause of the [*4]accident, because the unsecured scaffold with unlevel, uneven, and unsecured floor planks initially caused him to lose his balance and fall (see Mora v Wythe and Kent Realty LLC, 171 AD3d 426 [1st Dept 2019]). Thus, even if a jury were to find that plaintiff had disobeyed instructions to install the protective railings, defendants' liability for failing to provide adequate safety devices, i.e., a scaffold that could properly support plaintiff's balance as he worked, would not be reduced (see id.; Montalvo, 8 AD3d at 174).
Although not pertinent to our holding here, defendants argue that Hopkins's contradictory statements raise an issue of fact as to her credibility that should be resolved by a jury. Hopkins's first affidavit states that, if safety railings had been installed, they would have protected plaintiff from falling. In contrast, Hopkins avers in her second affidavit that safety railings would not have prevented plaintiff's fall. Hopkins's changed opinion could be seen as a flagrantly feigned attempt to tailor facts to favor plaintiff's case (see e.g. Gogos v Modell's Sporting Goods, Inc., 87 AD3d 248, 252-254 [1st Dept 2011]; Branham v Loews Orpheum Cinemas, Inc., 31 AD3d 319, 323-324 [1st Dept 2006], affd 8 NY3d 931 [2007]; Anderson v Beth Israel Med. Ctr., 31 AD3d 284, 287-288 [1st Dept 2006]). However, plaintiff's unrefuted testimony is all that is needed to determine the initial cause of his fall—the uneven, unsupported, and shaking scaffold. Thus, as they pertain to the issue of the sole and proximate cause of the accident, Labarbera's alleged instructions and Hopkins's contradiction are of no moment.
In light of the grant of summary judgment to plaintiff on his Labor Law § 240 (1) claim, the Labor Law § 241 (6) claim is academic (see Jerez v Tishman Constr. Corp. of N.Y., 118 AD3d 617, 617-618 [1st Dept 2014]). THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: February 22, 2022