**Caguana v 111 W. 57th Prop. Owner, LLC**

2024 NY Slip Op 33974(U)

November 11, 2024

Supreme Court, New York County

Docket Number: Index No. 158637/2016

Judge: David B. Cohen

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

| | | |
|---|---|---|
| PRESENT: | HON. DAVID B. COHEN | PART 58 |
| | *Justice* | |

-----------------------------------------------------------------------------X

JORGE CAGUANA, ROSA ARQUI,

                               Plaintiffs,

                 - v -

111 WEST 57TH PROPERTY OWNER, LLC, JDS
CONSTRUCTION GROUP, LLC,

                               Defendants.

-----------------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 158637/2016 |
| MOTION DATE | 05/31/2024 |
| MOTION SEQ. NO. | 006 007 008 009 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 006) 207, 208, 209, 210, 211, 212, 213, 214, 215, 216, 217, 218, 219, 220, 221, 222, 223, 224, 225, 226, 227, 228, 229, 230, 231, 232, 233, 234, 235, 236, 237, 238, 239, 265, 266, 267, 268, 270, 274, 295, 311, 312, 313, 314, 315, 316, 317, 318, 319, 336, 337, 341, 345, 350, 351, 356, 360, 364, 369, 370, 371, 372

were read on this motion to/for                       JUDGMENT - SUMMARY         .

The following e-filed documents, listed by NYSCEF document number (Motion 007) 169, 170, 171, 172, 173, 174, 175, 176, 177, 178, 179, 180, 181, 182, 183, 184, 185, 186, 271, 275, 278, 279, 280, 281, 282, 283, 284, 285, 286, 287, 288, 289, 290, 291, 292, 293, 294, 338, 342, 346, 354, 357, 361, 365

were read on this motion to/for                           INQUEST             .

The following e-filed documents, listed by NYSCEF document number (Motion 008) 189, 190, 191, 192, 193, 194, 195, 196, 197, 198, 199, 200, 201, 202, 203, 204, 205, 206, 272, 276, 296, 297, 298, 299, 300, 301, 302, 303, 304, 305, 306, 307, 308, 309, 310, 339, 343, 347, 349, 352, 358, 362, 366

were read on this motion to/for              SUMMARY JUDGMENT(AFTER JOINDER    .

The following e-filed documents, listed by NYSCEF document number (Motion 009) 240, 241, 242, 243, 244, 245, 246, 247, 248, 249, 250, 251, 252, 253, 254, 255, 256, 257, 258, 259, 260, 261, 262, 263, 264, 273, 277, 320, 321, 322, 323, 324, 325, 326, 327, 328, 329, 330, 331, 332, 333, 334, 335, 340, 344, 348, 353, 355, 359, 363, 367

were read on this motion to/for                       JUDGMENT - SUMMARY         .

       This is an action to recover damages for personal injuries allegedly sustained by plaintiff Jorge Caguana (plaintiff), on September 22, 2016, when, while working as a carpenter on the ninth-floor of a construction site located at 111 West 57th Street, New York, New York (the Premises), he stepped onto a plywood-covered hole and fell through the hole to the floor below.

In motion sequence number 006, defendants/third-party plaintiffs 111 West 57th Property Owner, LLC (111 West) and JDS Construction Group, LLC (JDS) (together, defendants), move, pursuant to CPLR 3212, for summary judgment dismissing the complaint and all cross-claims and counterclaims and for summary judgment in their favor on their third-party claims for contractual indemnification, common-law indemnification and contribution against third-party defendants Site Safety LLC (Site Safety) and Safety & Quality Plus (SQP).

In motion sequence number 007, plaintiff and Rosa Arqui (collectively, plaintiffs) move, pursuant to CPLR 3212, for summary judgment in their favor on plaintiff's Labor Law § 240(1) claim against defendants.

In motion sequence number 008, Site Safety moves, pursuant to CPLR 3212, for summary judgment dismissing the third-party complaint and all cross-claims against it.

In motion sequence number 009, SQP moves, pursuant to CPLR 3212, for summary judgment dismissing the third-party complaint and all cross-claims against it.

Motion sequence numbers 006, 007, 008 and 009 are hereby consolidated for disposition.

## I.     BACKGROUND

On the day of the accident, the Premises was owned by 111 West, which had hired JDS as a construction manager for a project at the Premises that entailed the new construction of a high-rise building (the Project).  111 West also hired Site Safety to provide safety management services for the Project.  JDS hired SQP to provide safety inspections, and non-party Parkside Construction Builders Corp (Parkside) as a concrete subcontractor; plaintiff was employed by Parkside.

***Plaintiff's Deposition Testimony (NYSCEF Doc. No. 179)***

Plaintiff testified that his work at the project included setting up metal and wood forms

for concrete pours and then removing the forms once the concrete cures. He had a hardhat and safety harness, but there was no lifeline to which to hook his harness. Plaintiff's foreman, "Brazil," was also a Parkside employee and was the only person who directed plaintiff's work at the Premises.

At the time of the accident, plaintiff was working on the ninth floor, and had been tasked with carrying a form, measuring eight-feet long by three-feet wide, from one location to another for installation. The floor in the accident area was made of wooden planks, and no concrete had yet been poured there.

As plaintiff was carrying the form, he stepped on a piece of plywood and fell through a hole in the floor down to the eighth floor (the Hole). Immediately after the accident, he saw Brazil looking through the hole at him, calling to him. Brazil then lowered a ladder through the hole and helped plaintiff climb back to the ninth floor.

### Deposition Testimony of JDS's Assistant Superintendent (NYSCEF Doc. No. 180)

JDS's assistant superintendent of construction testified that he was "involved" with the Project at the Premises, and that Parkside was the concrete subcontractor, Site Safety was the concrete safety manager, and SQP was the safety manager.

Shown a copy of a document, the witness confirmed that it was the daily construction report for the day of the accident, which showed that Parkside was working that day. He was also shown a JDS incident report and confirmed that it was for the subject accident and that it was prepared by JDS's "office person."

Typically, an under-construction floor would have several openings for "plumbing, HVAC, electrical" as well as stairs and elevators, according to the witness. He estimated the

distance between the deck of the ninth floor and the deck of the eighth floor to be "[a]pproximate[ly] 12 to 15 feet."

He had no personal knowledge of plaintiff's fall, and did not recall if he ever saw the Hole. He also did not know the Hole's dimensions or its exact location, or whether the Hole was covered or, if covered, how it was covered.

**Deposition Testimony of Site Safety's Concrete Safety Manager (NYSCEF Doc. No. 181)**

Site Safety's concrete safety manager was present at the Premises daily, and his duties included walking the job site to identify any "infraction[s] or deficiencies at the site." If he saw a deficiency, he would note it in the safety log and then "notify the contracts by e-mail or handwritten letter." Specifically, he would copy the daily log and take it to JDS's main office, leaving it with JDS'S assistant superintendent and also providing a copy to Parkside's foreman.

He confirmed that he prepared the site safety manager's log on the day of the accident, and that the log did not note any deficiencies that needed addressing or that an accident had occurred. It also failed to indicate that there were any openings or holes on the ninth floor, which would have been noted on the log if they existed.

The witness was unaware of plaintiff's accident and did not recall being notified of an accident occurring that day, and he also had never seen an accident report about the accident. He testified that he might not have been made aware of the accident because reporting accidents was not part of his responsibilities. Rather, "the overall manager's duty with site safety [does] the accident report."

If he learned of an accident that affected concrete workers, he would typically obtain a copy of the accident report and/or safety manager's report and copy the information into his own report, but would not investigate further.

Site Safety did not have stop work authority at the Project, or a responsibility to notify the Department of Buildings of any accidents, as that duty "belongs to the site safety manager."

The witness also testified that he had no interaction with SQP, aside from sharing an office with its employee, and that Site Safety and SQP did not share their logs with each other.

**Deposition Testimony of SQP's Owner (NYSCEF Doc. No. 289)**

The owner of SQP, a safety management company, testified that she was involved in drafting SQP's contracts. JDS hired SQP pursuant to a work proposal that she prepared and sent to JDS, and JDS's acceptance of the work proposal was verbal; there was no contract that was signed and returned. Subsequently, JDS sent SQP an indemnification document, which the owner signed and returned to JDS.

Site Safety and SQP did not work together at the Project, and SQP had two site safety managers there, whose duties included "walk[ing] the job site throughout the day." If a safety manager "sees something he tells the team, the JDS team and the supers, and they are responsible to fix the items." The safety managers were also responsible for preparing daily logs for JDS, but SQP did not have authority to stop work.

The owner testified that SQP did not typically prepare accident reports as "JDS filed their own accident reports," and that if SQP was "notified of an accident, we fill out an accident report." However, SQP was never advised of the subject accident, and had it been so notified, it would have been required to call the Department of Buildings to report it.

**The JDS Incident Report (Doc No. 183)**

JDS's incident report, dated the day of the accident, provides that plaintiff was a Parkside employee, and describes the accident as follows:

It was reported that while removing a piece of formwork on the 9th floor, [plaintiff] fell through a hole to the 8th floor. He reported pain in his right side and received minor scratches on his arms.

### *Construction Management Agreement (Doc. No. 267)*

The construction management agreement between 111 West, as owner, and 111 Construction Manager, LLC, as construction manager, is dated June 4, 2015 (the 111 West/JDS Agreement). JDS is the successor in interest to 111 Construction Manager, LLC, and received assignment of the agreement (NYSCEF Doc. No. 208).

The preamble section of 111 West/JDS Agreements provides the following overarching expectations of the construction manager:

> JDS, using Trade Contractors . . . retained by Construction Manager, and in isolated cases by Owner, and as hereafter set forth, shall perform all of the required work (the "Work"), which is comprised of the completed construction required by the Contract Documents, and includes all labor, materials, tools, equipment, temporary utilities, supervision and management necessary to complete the construction of the Project in accordance with the Contract Documents.
>
> . . .
>
> [JDS] is willing to act in such capacity and cause to be provided through Trade Contractors or its own forces, as hereafter provided, all such labor, materials, equipment, tools, equipment, temporary utilities, supervision and management services required for the timely, lien free completion of the Project and otherwise performs its obligations hereunder.

The scope of work section of the 111 West/JDS Agreement provides the following:

> The Work. [JDS] shall cause to be performed and provided through Trade Contractors, or its own forces with respect to general conditions work (as hereinafter provided), all labor, materials, equipment, tools and services . . . required for the complete construction of the Project in accordance with the terms of the Contract Documents.

[* 6]

The "Construction Manager's Status and Duties" section requires JDS to "provide a full-time Site Safety Manager" and requires that "[JDS] routinely shall inspect the Work to check safety precautions or programs for the Project." Moreover, "[t]he performance of these services by [JDS] shall be in addition to the responsibility of Trade Contractors for safety of persons or property".

*Safety Consultancy Agreement (Doc. No. 225)*

Site Safety and "111 West 57th Partners LLC" entered into a "Consultancy Agreement," dated September 19, 2014 (the Site Safety Agreement), for safety consultancy at the Project at the Premises, which contains an indemnification provision that provides, as relevant, the following:

> To the fullest extent permitted by law, [Site Safety] will defend, indemnify, and hold Owner, and all Owner Related Parties, the Affiliates, such other entities as listed in Exhibit B, and each of their constituent agents, employees, officers, directors, members, and shareholders (collectively, the "Indemnitees") harmless against and from all claims . . . to the extent arising out of or resulting from . . .

The remainder of the provision is struck and replaced by an addendum stating:

> (a) [Site Safety's] negligent acts, errors or omissions in the performance of this Contract; (b) willful or intentional acts of wrongdoing by [Site Safety]; (c) violation of federal, state or local law by [Site Safety]; or (d) [Site Safety's] breach of the terms of this Contract.

*SQP Proposal (NYSCEF Doc. No. 258)*

SQP performed work at the Premises pursuant to a "Proposal" dated May 2, 2014. The work described therein included conducting site safety inspections, identifying deficiencies, conducting daily inspections, and preparing daily reports.

After JDS accepted the Proposal, SQP executed a "Hold Harmless/Access Agreement" dated September 22, 2014 (NYSCEF Doc. No. 256) (the Hold Harmless Agreement), which provides, as relevant:

> To the fullest extent permitted by law, [SQP] shall indemnify and hold harmless Developer, Construction Manager, Owner . . . from and against claims . . . arising out of or resulting from performance of the Work . . . caused in whole or in part by the negligent acts or omissions of Contractor.

## DISCUSSION

"[T]he proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact. Failure to make such prima facie showing requires denial of the motion, regardless of the sufficiency of the opposing papers" (*Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986] [internal citations omitted]). Once prima facie entitlement has been established, in order to defeat the motion, the opposing party must "'assemble, lay bare, and reveal his [or her] proofs in order to show his [or her] defenses are real and capable of being established on trial . . . and it is insufficient to merely set forth averments of factual or legal conclusions'" (*Genger v Genger*, 123 AD3d 445, 447 [1st Dept 2014], quoting *Schiraldi v U.S. Min. Prods.*, 194 AD2d 482, 483 [1st Dept 1993]). If there is any doubt as to the existence of a triable fact, the motion for summary judgment must be denied (*Rotuba Extruders v Ceppos*, 46 NY2d 223, 231 [1978]).

***Plaintiff's Labor Law § 240(1) Claim (Motion Sequence Numbers 006 and 007)***

Labor Law § 240(1), known as the Scaffold Law, provides as relevant:

> All contractors and owners and their agents . . . in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists,

stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes,
and other devices which shall be so constructed, placed and operated
as to give proper protection to a person so employed.

Labor Law § 240(1) "imposes a nondelegable duty on owners and contractors to provide

devices which shall be so constructed, placed and operated as to give proper protection to those

individuals performing the work" (*Quiroz v Memorial Hosp. for Cancer & Allied Diseases*, 202

AD3d 601, 604 [1st Dept 2022] [internal quotation marks and citations omitted]). It "was

designed to prevent those types of accidents in which the scaffold . . . or other protective device

proved inadequate to shield the injured worker from harm directly flowing from the application

of the force of gravity to an object or person'" (*John v Baharestani*, 281 AD2d 114, 118 [1st

Dept 2001], quoting *Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 501 [1993]).

> The statute is violated when the plaintiff is exposed to an
> elevation-related risk while engaged in an activity covered by the
> statute and the defendant fails to provide a safety device adequate
> to protect the plaintiff against the elevation-related risk entailed in
> the activity or provides an inadequate one.

(*Jones v 414 Equities LLC*, 57 AD3d 65, 69 [1st Dept 2008]; *O'Brien v Port Auth. of N.Y. &*

*N.J.*, 29 NY3d 27, 33 [2017] [section 240 liability "is contingent upon the existence of a hazard

contemplated in section 240(1) and the failure to use, or the inadequacy of, a safety device of the

kind enumerated therein"]). In addition, Labor Law § 240(1) "must be liberally construed to

accomplish the purpose for which it was framed" (*Valensisi v Greens at Half Hollow, LLC*, 33

AD3d 693, 695 [2d Dept 2006] [internal citations omitted]).

That said, not all workers injured at a construction site fall within the scope of protections

of section 240(1), and "a distinction must be made between those accidents caused by the failure

to provide a safety device . . . and those caused by general hazards specific to a workplace"

(*Makarius v Port Auth. of N.Y. & N. J.*, 76 AD3d 805, 807 [1st Dept 2010]; *Buckley v Columbia*

*Grammar & Preparatory*, 44 AD3d 263, 267 [1st Dept 2007] [section 240(1) "does not cover the type of ordinary and usual peril to which a worker is commonly exposed at a construction site"). Instead, liability is "contingent upon the existence of a hazard contemplated in section 240(1) and the failure to use, or the inadequacy of, a safety device of the kind enumerated therein" (*Nicometi v Vineyards of Fredonia, LLC*, 25 NY3d 90, 97 [2015], quoting *Narducci v Manhasset Bay Assoc.*, 96 NY2d 259, 267 [2001]).

Therefore, to prevail on a Labor Law § 240(1) claim, a plaintiff must establish that the statute was violated, and that this violation was a proximate cause of his or her injuries (*Barreto v Metropolitan Transp. Auth.*, 25 NY3d 426, 433 [2015]).

Defendants first argue that JDS – the construction manager – is neither an owner or general contractor and, therefore, not a proper Labor Law defendant. They do not, however, make any arguments regarding 111 West, the owner, and thus, to the extent that defendants' motion seeks relief with respect to 111 West, it is denied.

> When the work giving rise to [the duty to conform to the requirements of Labor Law §§ 240(1) and 241(6)] has been delegated to a third party, that third party then obtains the concomitant authority to supervise and control that work and becomes a statutory 'agent' of the owner or general contractor. Only upon obtaining the authority to supervise and control does the third party fall within the class of those having nondelegable liability as an 'agent' under sections 240 and 241.

(*Russin v Louis N. Picciano & Son*, 54 NY2d 311, 318 [1981]). Accordingly, for a party to be "vicariously liable as an agent of the property owner for injuries sustained under the statute," it must have "had the ability to control the activity which brought about the injury" (*Walls v Turner Constr. Co.*, 4 NY3d 861, 863-864 [2005]; *cf. DaSilva v Haks Engrs., Architects & Land Surveyors, P.C.*, 125 AD3d 480, 481 [1st Dept 2015] [construction manager did not become a statutory agent under the Labor Law where the contract "did not confer upon the construction

manager the right to exercise supervisory control over the individual contractors, nor were [the construction manager defendants] authorized to stop the work if their personnel observed an unsafe practice"]).

Defendants argue that JDS's construction management agreement did not confer the authority to control the activity which brought about plaintiff's injury – i.e. the covering and/or securing of the alleged hole.

In *Walls, supra*, the Court of Appeals determined that a construction manager was an agent and a proper Labor Law defendant based on: "(1) the specific contractual terms creating agency, (2) the absence of a general contractor, (3) [the construction manager's] duty to oversee the construction site and the trade contractors, and (4) [the construction manager's] representative's acknowledgment that [it] had authority to control activities at the work site and to stop any unsafe work practices" (*id.* at 864).

Here, the 111 West/JDS Agreement explicitly grants JDS the broad authority to effectuate the construction of the Project, including hiring and overseeing subcontractors, providing safety, and conducting inspections. In addition, it is undisputed that there was no general contractor for the Project, and that JDS was responsible for hiring all of the trade contractors, as well as a safety manager.

Thus, JDS's "broad responsibility was both that of a coordinator and overall supervisor for the work being performed on the job site [and it was] under a contractual obligation to monitor [Parkview's] work and to protect [Parkview's] employees" (*id.* at 864; *Valdez v Turner Constr. Co.*, 171 AD3d 836, 839 [2d Dept 2019] [construction manager who had "broad responsibility for ensuring site safety . . . had the ability to control the activity that brought about the plaintiff's injuries"]).

JDS's argument that it was not delegated the overall authority to supervise and control Parkview's work – and, therefore, plaintiff's work – is unpersuasive. Rather, for the purposes of the Labor Law, JDS was an agent of 111 West with a broad responsibility at the Project, including safety, and therefore, it is a proper defendant under the Labor Law.

Next, JDS appears to argue that it cannot be liable under the Labor Law because it delegated its safety authority to SQP, which was "retained with the specific responsibilities of performing safety inspections and providing safety recommendations." However, the section 240(1) duties of an owner or general contractor or their agents are non-delegable (*Quiroz,* 202 AD3d at 604).

Turning to the merits of the claim, plaintiff alleges that, while working on the ninth floor, he stepped on a corner of a piece of wood covering the Hole and then fell through the Hole to the eighth floor below. In support of this claim, plaintiff relies on his own testimony and JDS's accident report that indicated that it was "reported" that plaintiff fell through a hole.

Courts in this State "have repeatedly held that [Labor Law § 240(1)] is violated when workers fall through unprotected floor openings" (*Alonzo v Safe Harbors of the Hudson Hous. Dev. Fund Co., Inc.,* 104 AD3d 446, 450 [1st Dept 2013]; *see Devlin v AECOM,* 224 AD3d 437 [1st Dept 2024] ["Plaintiff's fall through an insufficiently guarded opening in the floor of the worksite . . . warrants summary judgment on [his] claim pursuant to Labor Law § 240(1)"]; *Burke v Hilton Resorts Corp.,* 85 AD3d 419, 419-420 [1st Dept 2011]; *Piccone v Metropolitan Tr. Auth.,* 205 AD3d 628, 628-629 [1st Dept 2022] [granting plaintiff partial summary judgment on Labor Law § 240(1) claims after he established that he fell through unguarded manhole and defendants failed to identify questions of fact]; *Alonzo,* 104 AD3d at 450 [similar]).

Accordingly, plaintiff has met his prima facie burden of establishing that his fall through an insufficiently covered and/or secured hole constitutes a violation of Labor Law § 240(1).

In opposition, defendants argue that there remains a question as to whether a hole was present, and whether plaintiff fell through it. Essentially, they argue that there is a question of fact as to how the accident occurred (*see Ellerbe v Port Auth.* of N.Y. & N.J., 91 AD3d 441, 442 [1st Dept 2012] ["Where credible evidence reveals differing versions of the accident, one under which defendants would be liable and another under which they would not, questions of fact exist making summary judgment inappropriate"]).

In support of this argument, defendants rely on Site Safety's daily log for the day of the accident, which did not mention the existence of an opening or hole, and testimony that if an opening or hole was present, the log would have mentioned it.

However, plaintiff does not claim that the Hole was uncovered or otherwise visible, but rather that the Hole was covered by wood. Moreover, defendants' witness's testimony does not establish that a covered hole was not present, but only that the witness did not identify any "infractions" or "deficiencies." However, there is no evidence that a covered hole would be considered an "infraction" or "deficiency" of the type that would be included on a daily log, nor that the daily log would note the existence of covered holes, regardless of infraction or deficiency.

Given the foregoing, defendants have failed to raise a question of fact as to whether the Hole existed. Nor did they articulate an alternate version of the accident that would raise questions regarding plaintiff's otherwise uncontroverted version of the accident. Accordingly, plaintiff is entitled to summary judgment in his favor on his Labor Law § 240(1) claim against defendants, and defendants are not entitled to summary dismissal of the claim.

***Plaintiff's Labor Law § 241(6) Claim (Motion Sequence Number 006)***

Since plaintiff is entitled to summary judgment on liability on his Labor Law § 240(1) claim, it is unnecessary to address his Labor Law § 241(6) claim; as his damages are the same under either theory of liability and he may only recover once, the issue is academic (*see Corleto v Henry Restoration Ltd.*, 206 AD3d 525, 526 [1st Dept 2022] [deeming issue of Labor Law § 241(6) claim academic after finding plaintiff entitled to partial summary judgment on Labor Law § 240(1) claim]; *Jerez v Tishman Constr. Corp. of N.Y.*, 118 AD3d 617, 617-618 [1st Dept 2014] [similar]). However, in the interest of a complete record in case of appellate review, it is discussed.

Labor Law § 241(6) provides, in pertinent part, as follows:

> All contractors and owners and their agents, . . . when constructing or demolishing buildings or doing any excavating in connection therewith, shall comply with the following requirements:
> * * *
> (6)  All areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, [and] equipped . . . as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places.

Labor Law § 241(6) imposes a nondelegable duty of reasonable care upon owners and contractors "'to provide reasonable and adequate protection and safety' to persons employed in, or lawfully frequenting, all areas in which construction, excavation or demolition work is being performed" (*Rizzuto v L.A. Wenger Contr. Co.*, 91 NY2d 343, 348 [1998]; *see also Ross v Curtis-Palmer Hydro-Electric Co.*, 81 NY2d at 501–502).

To sustain a Labor Law § 241(6) claim, it must be established that the defendant violated a specific, "concrete specification" of the Industrial Code, rather than a provision that considers only general worker safety requirements (*Messina v City of New York,* 300 AD2d 121, 122 [1st

[* 14]

Dept 2002]). Such violation must be a proximate cause of the plaintiff's injuries (*Yaucan v Hawthorne Vil., LLC*, 155 AD3d 924, 926 [2d Dept 2017] ["a plaintiff must demonstrate that his or her injuries were proximately caused by a violation of an Industrial Code regulation that is applicable to the circumstances of the accident"]; *see also Sutherland v Tutor Perini Bldg. Corp.*, 207 AD3d 159, 161 [1st Dept 2022]).

As an initial matter, while plaintiff cites multiple violations of the Industrial Code in the bill of particulars, he only affirmatively opposes dismissal of the claim predicated on a violation of Industrial Code 12 NYCRR 23-1.5(c)(3). Plaintiff also argues that defendants failed to address or otherwise raise arguments respecting sections 23-1.7, 1.16 and 1.17 in their motion and, therefore, failed to meet their prima facie burden of dismissing those claims. Those four Code violations are therefore the only ones remaining at issue here.

As to the Code violations that plaintiff does not address in these motions, they are dismissed (*see Kempisty v 246 Spring St., LLC*, 92 AD3d 474, 475 [1st Dept 2012]).

*Industrial Code 12 NYCRR 23-1.7, 1.16 and 1.17*

As defendants set forth no arguments regarding these Industrial Code provisions, they have not met their prima facie burden for their dismissal.

*Industrial Code 12 NYCRR 23-1.5(c)(3)*

Defendants' sole argument with respect to the entirety of section 23-1.5 is that it is too general to allow for recovery under Labor Law § 241(6). However, section 23-1.5(c)(3) has been held to be sufficiently specific (*Becerra v Promenade Apts. Inc.*, 126 AD3d 557, 559 [1st Dept 2015]).

As defendants do not raise any other argument in their motion with respect to this subsection, they have not met their prima facie burden for summary judgment dismissing this claim.

### Plaintiff's Labor Law §§ 240(2) and 240(3) Claims (Motion Sequence Number 006)

As plaintiff does not oppose dismissal of these claims, they are dismissed.

### Plaintiff's Common-Law Negligence and Labor Law § 200 Claims (Motion Sequence Number 006)

Defendants set forth sufficient evidence establishing that they did not have actual control over the injury-producing work (*see Andino v Wizards Studios N. Inc.*, 223 AD3d 508, 509 [1st Dept 2024]), and did not create or have notice of the subject hazard sufficient to give rise to liability under section 200 or the common-law (*Mendoza v Highpoint Assoc., IX, LLC*, 83 AD3d 1, 9 [1st Dept 2011]). Plaintiff takes "not position" (sic) in opposing the dismissal of said claims (NYSCEF Doc. No. 350).

Accordingly, defendants are entitled to summary judgment dismissing these claims.

### Defendants' Third-Party Contractual Indemnification Claims Against Site Safety (Motion Sequence Numbers 006 and 008)

"A party is entitled to full contractual indemnification provided that the 'intention to indemnify can be clearly implied from the language and purposes of the entire agreement and the surrounding facts and circumstances'" (*Karwowski v 1407 Broadway Real Estate, LLC*, 160 AD3d 82, 87-88 [1st Dept 2018], quoting *Drzewinski v Atlantic Scaffold & Ladder Co.*, 70 NY2d 774, 777 [1987]).

"In contractual indemnification, the one seeking indemnity need only establish that it was free from any negligence and was held liable solely by virtue of the statutory liability" (*Correia*, 259 AD2d at 65; *see also Lexington Ins. Co. v Kiska Dev. Group LLC*, 182 AD3d 462,

[* 16]

464 [1st Dept 2020] [denying summary judgment where indemnitee "has not established that it was free from negligence"]).

Further, unless the indemnification clause explicitly requires a finding of negligence on behalf of the indemnitor, "[w]hether or not the proposed indemnitor was negligent is a non-issue and irrelevant" (*Correia*, 259 AD2d at 65). Here, the indemnification provision at issue is triggered only if plaintiff's accident arose from Site Safety's negligence in the performance of its work under the Site Safety Agreement.

Generally, a site safety supervisor that is responsible only for safety inspections and compliance monitoring cannot be liable in negligence for an accident where it otherwise "lacked control over [the injury-producing] work" (*Martinez v 342 Prop. LLC*, 89 AD3d 468, 469 [1st Dept 2011]).

Site Safety states that its scope of work was specifically limited to providing a concrete safety manager in accordance with the New York City Building Code (the Building Code), and the Building Code limits the duties of a concrete safety manager to monitoring, notifying and advising, and performing inspections (*see* NY City Building Code [Administrative Code of City of NY, title 28, ch 7] § 3310-02 [e]).

Site Safety argues that it performed its inspections and prepared reports as required by the Site Safety Agreement, and denies that it had a duty to direct or supervise workers, or the authority to correct hazards. In opposition, defendants argue that Site Safety failed to identify and report a hazardous condition and that such a failure constitutes a negligent omission that triggered the indemnification provision.

The recent First Department case, *Dejesus v Downtown Re Holdings LLC*, 217 AD3d 524 (1st Dept 2023) is instructive. In *Dejesus*, the safety manager, similar to Site Safety here, "was

to serve only in an advisory capacity and had no obligation or authority to correct work hazards" (*id.* at 527). The general contractor in *Dejesus* brought a contractual indemnification claim against the safety manager on a theory that the safety manager's "failure to identify and warn of the unsafe conditions constituted 'omissions'" that arose from its work (*id.* at 527). The court dismissed that claim because "[g]iven the limited scope of [the safety manager's] responsibilities, the purported 'omissions' were insufficient to trigger the indemnification clause" (*id.* at 527), further noting that "there was no evidence that [the safety manager's] 'actions or omissions' resulted in plaintiff's injuries" (*id.* at 527; *see e.g. Torres-Quito v 1711 LLC*, 227 AD3d 113, 119 [1st Dept 2024] [site safety manager "was entitled to summary judgment dismissing [owner and general contractor's] claims against it in the absence of any negligence on its part. Evidence showing that [the safety manager] had site safety or general supervisory authority, without more, is insufficient to impose Labor Law § 200 and common-law negligence liability"]).

Defendants also argue that the Site Safety Agreement is, essentially, ambiguous as to Site Safety's duties, in that the agreement "provides little to no information as to Site Safety's true scope of work" and "is silent as to the supervision or control of the contractor's means and methods" (NYSCEF Doc. No. 297). Therefore, they argue, at the least a question of fact remains as to whether Site Safety had the authority to supervise plaintiff's work.

However, "an ambiguity never arises out of what was not written at all" (*Donohue v Cuomo*, 38 NY3d 1, 13 [2022]; *quoting Greenfield v Philles Records*, 98 NY2d 562, 573 [2002]). Thus, the fact that the Site Safety Agreement does not include a duty to oversee a contractor's means and methods leads to the conclusion that Site Safety had no such duty.

Accordingly, Site Safety is entitled to summary judgment dismissing the contractual indemnification claims against it, and defendants are not entitled to summary judgment in their favor on the same claims.

### Defendants' Third-Party Contractual Indemnification Claims Against SQP (Motion Sequence Numbers 006 and 009)

Similar to Site Safety, SQP argues that plaintiff's accident did not arise from any negligent acts or omissions with respect to SQP's work as a site safety manager, relying on its Proposal's recitation of its responsibilities, which are limited to conducting general safety inspections and preparing reports; and that it had no authority to supervise or control any work at the Premises.

In opposition, defendants argue that SQP breached a duty to observe and notify defendants of hazardous conditions. As discussed above, this argument is unavailing, as SQP has no duty with respect to the injury-producing work as it had no obligation to correct hazards (*Dejesus*, 217 AD3d at 527; *see e.g. Torres-Quito*, 227 AD3d at 119).

Accordingly, defendants are not entitled to summary judgment in their favor on their contractual indemnification claim against SQP and SQP is entitled to summary judgment dismissing same.

### Defendants' Contribution and Common-Law Indemnification Claims Against Site Safety and SQP (Motion Sequence Numbers 006, 008 and 009)

"To establish a claim for common-law indemnification, 'the one seeking indemnity must prove not only that it was not guilty of any negligence beyond the statutory liability but must also prove that the proposed indemnitor was guilty of some negligence that contributed to the causation of the accident'" (*Pena v Intergate Manhattan LLC*, 194 AD3d 576, 578 [1st Dept 2021], quoting *Correia*, 259 AD2d at 65).

"Contribution is available where two or more tortfeasors combine to cause an injury and is determined in accordance with the relative culpability of each such person" (*Godoy v Abamaster of Miami*, 302 AD2d 57, 61 [2d Dept 2003] [internal quotation marks and citations omitted]).

Here, as discussed above, neither SQP nor Site Safety had a duty of care with respect to plaintiff, and absent a duty, they may not be held liable to him for negligence. Thus, SQP and Site Safety are entitled to summary judgment dismissing the contribution and common-law indemnification claims against them (*see Marquez v L & M Dev. Partners, Inc.*, 141 AD3d 694, 700 [2d Dept 2016] [Safety manager who "did not actually direct or supervise the injury-producing work . . . demonstrated its prima facie entitlement to judgment as a matter of law dismissing the common-law indemnification" and contribution claims against it]; *see e.g. Shelton v Chelsea Piers, L.P.*, 214 AD3d 490, 490 [1st Dept 2023]). For the same reason, defendants are not entitled to summary judgment in their favor on the same claims.

### Defendants' Claim for Breach of Contract for the Failure to Procure Insurance as against Site Safety (Motion Sequence Number 008)

"A party moving for summary judgment on its claim for failure to procure insurance meets its prima facie burden by establishing that a contract provision requiring the procurement of insurance was not complied with" (*Dorset v 285 Madison Owner LLC*, 214 AD3d 402, 404 [1st Dept 2023] [internal quotation marks and citation omitted]). "The burden then shifts to the opposing party, who may raise an issue of fact by tendering the procured insurance policy in opposition to the motion" (*Benedetto v Hyatt Corp.*, 203 AD3d 505, 506 [1st Dept 2022] [citation omitted).

Here, Site Safety and SQP did not provide copies of their insurance policies, and are thus

not entitled to summary judgment dismissing the breach of contract for the failure to procure insurance claims against them (*Public Adm'r of Queens County v 124 Ridge LLC*, 203 AD3d 493, 495 [1st Dept 2022] [the movant "failed to establish, as a matter of law, that it procured the insurance it was contractually obliged to purchase, since it failed to submit the insurance policy"]).

### *SQP's Contractual Indemnification Cross-claim against Site Safety (Motion Sequence Number 008)*

Site Safety moves for summary judgment dismissing SQP's cross-claim for contractual indemnification against it on the ground that there is no contract which requires Site Safety to indemnify SQP. As SQP does not oppose the dismissal of this claim, Site Safety is entitled to summary judgment dismissing it.

### *Cross-claims against SQP (Motion Sequence Number 009)*

While SQP moves for relief with respect to cross-claims asserted against it, it makes no argument on these claims. Accordingly, it is not entitled to dismissal of said cross-claims.

The parties remaining arguments have been considered and found unavailing.

## CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the branch of the motion of defendants/third-party plaintiffs 111 West 57th Property Owner, LLC and JDS Construction Group, LLC (motion sequence number 006), pursuant to CPLR 3212, for summary judgment dismissing the complaint and all cross-claims and counterclaims is granted to the extent of severing and dismissing as against said defendants plaintiffs' common-law negligence and Labor Law § 200 claims and all the Labor Law § 241(6) claims, except those claims based upon alleged violations of Industrial Code 12 NYCRR 23-1.5 (c) (3), 23-1.7, 23-1.16 and 23-1.17, and is otherwise denied; and it is further

**ORDERED** that the branch of defendants' motion, pursuant to CPLR 3212, for summary judgment in their favor on their third-party claims for contractual indemnification, common-law indemnification and contribution against third-party defendants Site Safety LLC and Safety & Quality Plus is denied; and it is further

**ORDERED** that plaintiffs' motion (motion sequence number 007), for summary judgment in their favor on the Labor Law § 240(1) claim is granted; and it is further

**ORDERED** that third-party defendant Site Safety LLC's motion (motion sequence number 008), pursuant to CPLR 3212, for summary judgment dismissing the third-party complaint, and all cross-claims against it is granted except as to the third-party claim for breach of contract for the failure to procure insurance; and it is further

**ORDERED** that third-party defendant Safety & Quality Plus, Inc.'s motion (motion sequence number 009), pursuant to CPLR 3212, for summary judgment dismissing the third-party complaint, and all cross-claims against it is granted, except as to the third-party claim for breach of contract for the failure to procure insurance claim and any cross-claims asserted against it; and it is further

**ORDERED** that the parties appear for a settlement/trial scheduling conference on January 29, 2025 at 9:30 a.m. at 71 Thomas Steet, Room 305, New York, New York.

20241111206590DC0HENFEAA5D07224F43C2BFA7C6F85FBAC68C

| 11/11/2024 | | DAVID B. COHEN, J.S.C. |
|---|---|---|
| DATE | | |

| CHECK ONE: | ☐ CASE DISPOSED | ☒ NON-FINAL DISPOSITION |
|---|---|---|
| | ☐ GRANTED   ☐ DENIED | ☒ GRANTED IN PART   ☐ OTHER |
| APPLICATION: | ☐ SETTLE ORDER | ☐ SUBMIT ORDER |
| CHECK IF APPROPRIATE: | ☐ INCLUDES TRANSFER/REASSIGN | ☐ FIDUCIARY APPOINTMENT   ☐ REFERENCE |

[* 22]