**Pizzola v Tutor Perini Corp.**

2025 NY Slip Op 30657(U)

February 26, 2025

Supreme Court, New York County

Docket Number: Index No. 152407/2021

Judge: Richard Tsai

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:     **HON. RICHARD TSAI**                              PART              **21**

*Justice*

--------------------------------------------------------------------------------X

ANTHONY PIZZOLA,

                                                  Plaintiff,

- v -

TUTOR PERINI CORPORATION, MTA CAPITAL
CONSTRUCTION COMPANY, METROPOLITAN
TRANSPORTATION AUTHORITY, NEW YORK CITY
TRANSIT AUTHORITY, METRO-NORTH COMMUTER
RAIL ROAD and LONG ISLAND RAIL ROAD,

                                                  Defendants.

--------------------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 152407/2021 |
| MOTION DATE | 09/25/2023 |
| MOTION SEQ. NO. | 002-003 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document numbers (Motion 002) 58-77, 92-95, 98, 100, 103, 105-120, 124, 127-130, 134

were read on this motion to/for                     JUDGMENT - SUMMARY                     .

The following e-filed documents, listed by NYSCEF document numbers (Motion 003) 78-91, 99, 101-102, 104, 121-122, 125-126, 131-133

were read on this motion to/for                     JUDGMENT - SUMMARY                     .

      This is an action to recover damages for personal injuries allegedly sustained by a union electrician on August 13, 2020, when, while using a prybar to switch tracks at a junction in the subway tunnels under Grand Central Terminal (GCT), the prybar slipped, causing plaintiff to slip and fall from the tracks to the adjacent concrete surface.

      In motion sequence number 002, plaintiff Anthony Pizzola  moves for summary judgment in his favor on his Labor Law § 240 (1) claim and that part of his Labor Law § 241 (6) claim predicated upon a violation of Industrial Code 12 NYCRR 23-1.7 (d) as against defendants Tutor Perini Corporation (Tutor Perini), MTA Capital Construction Company (MTACC), Metropolitan Transportation Authority (MTA), New York City Transit Authority (NYCTA), Metro-North Commuter Rail Road Company s/h/a Metro-North Commuter Railroad  (Metro-North) and The Long Island Rail Road Company s/h/a Long Island Rail Road (LIRR) (collectively defendants).

      In motion sequence number 003, defendants move for summary judgment dismissing the complaint.

      This decision addresses both motions.

**152407/2021  PIZZOLA, ANTHONY vs. TUTOR PERINI CORPORATION**
**Motion No.  002 003**

**Page 1 of 20**

[* 1]

## BACKGROUND

On the day of the accident, GCT was operated by MTA. MTACC, on behalf of MTA, hired Tutor Perini to provide construction management services in connection with a project in the tunnels under GCT, known as the East Side Access project (the Project). Tutor Perini hired non-party Five Star Electric, Inc. (Five Star) to provide electrical services for the Project. Plaintiff was employed by Five Star.

### *Plaintiff's 50-h Testimony (NYSCEF Doc. No. 84)*

Plaintiff testified that on the day of the accident, he was a journeyman electrician employed by Five Star (plaintiff's 50-h tr at 26 line 25 through 27, line 6). He worked on the Project (*id.* at 27, lines 16-19). Five Star worked on the electrical infrastructure for the tunnels of the Long Island Rail Road under Grand Central Station (*id.* at 42, line 19 through 43, line 2). Plaintiff's duties on the Project included "maintaining the electricity down there . . . and switching the rails for other contractors" (*id.* at 29, lines 11-14).

Plaintiff and his partner, Godwin Roberts, would go to a meeting held by Tutor Perini, where they would receive their instructions for the day (*id.* at 48). Specifically, plaintiff and his co-worker learned what locations Tutor Perini intended to work on, which informed them as to what tracks they had to make ready for rail trucks to access (*id.* at 53, 54 ["we needed to switch the rails for them"]). Five Star's foreman, Jimmy Galante, gave plaintiff his assignments directly, or through Godwin, who might have received messages from Jimmy (*id.* at 67, lines, 12-24; at 68, lines 6-9; at 70, lines 8-15; at 70, line 25 through 71, line 5).

Plaintiff explained that rail switches are installed with a crank, which one can operate to "turn the rail so you can drive a train or a truck down one set of tracks or another set of tracks" (*id.* at 58). Some of the switches did not have a crank, and instead plaintiff needed to use "a pry bar" (*id.* at 58). The prybar that plaintiff used was steel and "approximately five feet tall" (*id.* at 116).

Plaintiff testified that at the time of the accident, he and Roberts were returning from dropping off material. To reach the location of their next assignment, they needed to switch a rail. The switch/junction "area was very wet" (*id.* at 120). The wetness was caused by naturally occurring humidity in the tunnels (*id.* at 129) coupled with "[p]oor ventilation" (*id.* at 134). Humidity related moisture buildup in the tunnels was a common occurrence (*id.* at 130).

Plaintiff explained that, to switch the rail, "you have to stand on" (*id.* at 124) two metal crosspieces between the rails that he called "platforms,"[1] (the Ties) preparing to switch the rail (*id.* at 106). He had to stand on the Ties to reach the switch (*id.* at 124).

---

[1] At oral argument on November 22, 2024, counsel for both parties acknowledged and confirmed that the "platforms" plaintiff referred to were railroad ties, the cross-braces between each rail of a railroad track. Accordingly, from herein, for ease of reference, the court will refer to the "platforms" as "the Ties."

**152407/2021 PIZZOLA, ANTHONY vs. TUTOR PERINI CORPORATION**          **Page 2 of 20**
**Motion No. 002 003**

[* 2]

There was a gap under the Ties that was "approximately a foot" deep (*id.* at 156). Normally the gap would house "links" that were part of the mechanical switching mechanism (*id.* at 157). "They weren't in this case" (*id.*) "[P]ools of water" created by the humidity were on the concrete beneath the Ties and "[e]verything was wet" (*id.* at 129). The wet condition was "a plaguing problem" in the tunnels (*id.* at 129).

Plaintiff stood on the Ties and "wedged the prybar in between the rails" (*id.* at 109). To shift the rail, he exerted force on the prybar by pulling it towards himself with both hands (*id.* at 115). Because the area was "very wet," the under-tension prybar "slipped from that position" and plaintiff was thrown "backwards violently" (*id.* at 127). More specifically, the "amount of force that [was] stored up in [the prybar] threw [him] backwards" (*id.* at 127). He later testified that "[w]hen the prybar threw [him] backwards, [his] feet slipped off" the Ties because "[t]hey were very wet and slippery" (*id.* at 130; 140 ["When the bar slipped, it threw me backwards, and my feet slipped off that metal platform"]). When he fell, his "lower butt and back hit the rail" and his feet "landed below" the Ties (*id.* at 144; 155). Plaintiff testified that his coworker, Roberts, witnessed the accident (*id.* at 141).

Plaintiff was shown a copy of his notice of claim and confirmed that its recitation of the accident was correct (*id.* at 102 [the notice of claim stated that plaintiff was "standing on the metal rail of a track/track assembly, prying the track with a pry bar . . . when he slipped as a result of wet condition, when pry bar came loose and was caused to fall"]). Plaintiff was also shown several photographs and testified that they depicted the accident location (*id.* at 86), but not the wetness (*id.* at 90).

Plaintiff testified that whenever he saw a wet track condition, he "just stayed alert" and did not otherwise do anything to dry the tracks (*id.* at 132). He was not provided with any materials to dry off the tracks (*id.* at 134). There was not any pooling water on the track where he stood (*id.* at 138).

### Plaintiff's Deposition Testimony (NYSCEF Doc. No. 68)

Plaintiff's testimony largely follows his earlier 50-h testimony. Plaintiff testified that he and his coworker would get their direction and work orders from Five Star's foreman (plaintiff's tr at 31). He only received instructions on how to do his work, including how and where to use a prybar, from Roberts and Five Star's foreman (*id.* at 65). Plaintiff and Roberts did meet with Tutor Perini's representatives to discuss "the other contractors and where their trucks needed to go down in the tunnels" (*id.* at 34). Plaintiff testified that he did not receive directions from Tutor Perini, but he did not know if Tutor Perini ever supervised his work (*id.* at 122).

Plaintiff testified that immediately prior to the accident, he stood on the Ties and "started to apply pressure with the prybar to switch the rails, and the prybar slipped out, violently throwing [him] backwards. [His] feet fell through the platform to the concrete below. And it whipped [him] down on the rails" (*id.* at 36). Plaintiff testified that the gap

**152407/2021   PIZZOLA, ANTHONY vs. TUTOR PERINI CORPORATION**
**Motion No.  002 003**

**Page 3 of 20**

3 of 20

[* 3]

between the Ties he stood on was "approximately eight to ten inches" (*id.* at 129), and that "there was a drop on the top of the platform about one to two feet" (*id.* at 55, line 25 through 56, line 2).

Plaintiff further testified that to combat the humidity and wet conditions in the tunnels there were very large "fans that they run to try to mitigate that" (*id.* at 62). The fans were "maintained" by Five Star and "were regularly shut down" (*id.*). Plaintiff did not know if the fans were operational at the time of the accident. Plaintiff also testified that the issue of tunnel humidity had been discussed at "safety meetings" run by Jimmy Galante, Five Star's foreman (*id.* at 132-133).

### Deposition Testimony of David Cannon (MTA's Vice President of Contracting Services) (NYSCEF Doc. No. 69)

David Cannon testified that on the day of the accident, he was MTA's vice president of contracting services. His duties included awarding construction contracts, overseeing outreach and procuring items for MTACC (Cannon tr at 12). Cannon testified that an MTA entity was designated as the owner for the Project, but he was not sure which one (Cannon tr at 12). Tutor Perini was the general contractor for the Project (*id.* at 10), and Tutor Perini was given authority to hire subcontractors (*id.* at 25).

Cannon testified that he was unaware of plaintiff's accident or the subject lawsuit. He had never seen any accident reports prior to his deposition (*id.* at 40).

### Deposition Testimony of Eric Schwing (Tutor Perini's Project Manager) (NYSCEF Doc. No. 70)

Eric Schwing testified that on the day of the accident, he was Tutor Perini's project manager for the Project. Tutor Perini was the general contractor for the Project (Schwing tr at 12). His duties included "overall responsibility for the work, the schedule, the cost, the quality" (Schwing tr at 12). Tutor Perini hired the subcontractors for the Project, including a site safety manager. Its employees had authority to stop work if they saw an unsafe practice or condition (*id.* at 13). Five Star Electric had a subcontract with Tutor Perini for this job (*id.* at 43).

Schwing testified that some of the rail switches became damaged due to water and rat infiltration and had to be removed and sent "back to the fabricator for repair" (*id.* at 23).

Schwing testified that Tutor Perini did not instruct Five Star on how to use prybars to switch rails (*id.* at 17). That duty would fall to "whichever foreman or tradesman did the work" (*id.*). Tutor Perini hired and directed the laborers who performed that work (*id.* at 22).

Schwing also testified that Tutor Perini assigned laborers to locations where switch machines were inoperable (*id.* at 28). Tutor Perini's superintendent or foreman

**152407/2021   PIZZOLA, ANTHONY vs. TUTOR PERINI CORPORATION**
**Motion No.  002 003**

**Page 4 of 20**

[* 4]                                                          4 of 20

showed its laborers how to manually switch a rail (*id.* at 30). He explained that "whenever a vehicle approached the [switch] [the worker on the vehicle] would talk to the laborer" and the laborer would switch the track (*id.* at 28-29).

At his deposition, Schwing was shown a copy of an accident report form. He confirmed that the form included a section for "corrective actions" and that the corrective action of "[a]dditional air flow is being planned for control of the humid conditions in the tunnels" (*id.* at 40).

### *The Accident Reports*

#### *The MTACC Injury Report Form (NYSCEF Doc. No. 73)*

The parties provide a copy of an MTACC injury report form for the accident, dated August 20, 2020 (the MTACC Report). It states that plaintiff's accident occurred when he "was throwing a switch at GCT 4 Track 302 . . . using a crowbar. The crowbar slipped causing [plaintiff] to fall backwards" (plaintiff's exhibit L at 1 [NYSCEF Doc. No. 73]). It lists the cause of the accident as "Humid/Slippery Surface" (*id.* at 3). It also lists the "corrective actions" to be taken as "[a]dditional air flow is being planned for control of the humid conditions in the tunnels / Permanent house ventilation is scheduled to be turned on" (*id.* at 3).

Attached to the MTACC Report is a witness statement from Roberts, plaintiff's coworker. Roberts states, as relevant, that plaintiff "was signal switching using a crowbar and lump hammer. He slipped and fell backwards while pulling the switch" (*id.* at 2).

#### *The Tutor Perini Accident Report (NYSCEF Doc. No. 74)*

The parties provide a copy of a Tutor Perini accident report for the accident, dated August 13, 2020 (the Tutor Perini Report). It states that plaintiff was "moving a track switch . . . using a crowbar, when it slipped off the rail switch causing him to fall backwards" (plaintiff's exhibit M, at 1 [NYSCEF Doc. No. 74]). It also includes plaintiff's statement, taken "by phone" which provides that plaintiff was "moving the track switch when the crowbar slipped due to the humidity and wetness on the rail causing [plaintiff] to fall" (*id.* at 3).

#### *The Five Star Accident Report (NYSCEF Doc. No. 75)*

The parties provide a copy of a Five Star accident report for the accident, dated August 14, 2020 (the Five Star Report). It states that plaintiff reported that "while switching track" plaintiff's "crowbar slipped due to humidity and wetness on rail" (plaintiff's exhibit N at 1 [NYSCEF Doc. No. 75]).

**152407/2021   PIZZOLA, ANTHONY vs. TUTOR PERINI CORPORATION**
**Motion No.  002 003**

**Page 5 of 20**

5 of 20

[* 5]

It also contains a Foreman's Incident Report, which stated that "while moving track switch for hi-rail truck with a crowbar, slipped and landed on left wrist . . ." (*id.* at 2).

### The Terrier Claims Services Written Statement (NYSCEF Doc. No. 76)

The parties provide a copy of a Terrier Claims Services written statement, dated August 24, 2020, signed by plaintiff. It states that, at the time of the accident, "underneath the switching, there [was] a gap between the rail and the floor" (plaintiff's exhibit O at 1 [NYSCEF Doc. No. 76]). It further states that plaintiff was "standing on the ties between the rails, and was using the pry bar to try to pull the switch" when "the bar slipped and threw [plaintiff] backward" (*id.* at 2). He "landed on the rails" and his left arm "landed on the concrete" (*id.* at 2).

### Expert Affidavit of David B. Peraza (Defendants' Expert Engineer) (NYSCEF Doc. No. 107)

David B. Peraza, a professional engineer registered in New York, provides an expert affidavit. In his affidavit, he opines that plaintiff's work was on ground level, standing on rail ties (Peraza aff., ¶¶ 6[a], [b]). There was "concrete just below" the rail ties (*id.* ¶ 6[b]). Peraza noted that "rail ties . . . are designed to provide structural horizontal support to maintain the configuration of rails comprising railroad tracks" (*id.* ¶ 12). Based on this, Peraza opines that plaintiff did not need any safety equipment to protect him from a fall from a height (*id.* ¶ 8).

Peraza also opines that any downward fall that plaintiff may have incurred was of a distance that "would not allow gravity to accumulate enough force to cause injury" (*id.* ¶ 6[c]). He further opines that the only height-related injury that plaintiff could have suffered would have been to his feet, and plaintiff alleges no foot injury (*id.* ¶ 6[g]).

### DISCUSSION

"[T]he proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact. Failure to make such prima facie showing requires denial of the motion, regardless of the sufficiency of the opposing papers" (*Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986] [internal citations omitted]).

Once prima facie entitlement has been established, in order to defeat the motion, the opposing party must "'assemble, lay bare, and reveal his [or her] proofs in order to show his [or her] defenses are real and capable of being established on trial . . . and it is insufficient to merely set forth averments of factual or legal conclusions'" (*Genger v Genger*, 123 AD3d 445, 447 [1st Dept 2014], quoting *Schiraldi v U.S. Min. Prods.*, 194 AD2d 482, 483 [1st Dept 1993]). If there is any doubt as to the existence of a triable

**152407/2021   PIZZOLA, ANTHONY vs. TUTOR PERINI CORPORATION**          **Page 6 of 20**
**Motion No.  002 003**

6 of 20

fact, the motion for summary judgment must be denied (*Rotuba Extruders v Ceppos*, 46 NY2d 223, 231 [1978]).

### The Labor Law § 241 (6) Claims (Motion Sequence Numbers 002 and 003)

Plaintiff moves for summary judgment in his favor on that part of his Labor Law § 241 (6) claim predicated upon a violation of Industrial Code 12 NYCRR 23-1.7 (d). Defendants move for summary judgment dismissing all of plaintiff's claims under Labor Law § 241 (6).

Labor Law § 241 (6) provides, in pertinent part, as follows:

> "All contractors and owners and their agents, . . . when constructing or demolishing buildings or doing any excavating in connection therewith, shall comply with the following requirements:
>
> * * *
>
> (6)　All areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, [and] equipped . . . as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places."

Labor Law § 241(6) imposes a nondelegable duty of reasonable care upon owners and contractors "'to provide reasonable and adequate protection and safety' to persons employed in, or lawfully frequenting, all areas in which construction, excavation or demolition work is being performed" (*Rizzuto v L.A. Wenger Contr. Co.*, 91 NY2d 343, 348 [1998]; *see also Ross v Curtis-Palmer Hydro-Electric Co.,* 81 NY2d at 501–502).

To sustain a Labor Law § 241 (6) claim, it must be established that the defendant violated a specific, "concrete specification" of the Industrial Code, rather than a provision that considers only general worker safety requirements (*Messina v City of New York,* 300 AD2d 121, 122 [1st Dept 2002]). Such violation must be a proximate cause of the plaintiff's injuries (*Yaucan v Hawthorne Vil., LLC*, 155 AD3d 924, 926 [2d Dept 2017] ["a plaintiff must demonstrate that his or her injuries were proximately caused by a violation of an Industrial Code regulation that is applicable to the circumstances of the accident"]; *see also Sutherland v Tutor Perini Bldg. Corp.*, 207 AD3d 159, 161 [1st Dept 2022]). "Whether a regulation applies to a particular condition or circumstance is a question of law for the court" (*Harrison v State of New York,* 88 AD3d 951, 953 [2d Dept 2011]).

As an initial matter, plaintiff lists multiple violations of the Industrial code and OSHA regulations in his complaint and bill of particulars. Except for sections 23-1.7 (d) and 23-1.7 (e) (2), plaintiff does not seek relief in his favor or oppose their dismissal. These uncontested provisions are deemed abandoned (*Kempisty v 246 Spring St., LLC*,

**152407/2021　PIZZOLA, ANTHONY vs. TUTOR PERINI CORPORATION**　　　　　**Page 7 of 20**
**Motion No.　002 003**

7 of 20

92 AD3d 474, 475 [1st Dept 2012] ["Where a defendant so moves, it is appropriate to find that a plaintiff who fails to respond to allegations that a certain section is inapplicable or was not violated be deemed to abandon reliance on that particular Industrial Code section"]).  Thus, defendants are granted summary judgment dismissing all claims under Labor Law § 241 (6) predicated on violations of OSHA regulations and predicated on violations of the Industrial Code other than 12 NYCRR 23-1.7 (d) and (e) (2).

*Industrial Code 12 NYCRR 23-1.7 (d)*

Industrial Code 12 NYCRR 23-1.7 (d) is sufficiently specific to support a Labor Law § 241 (6) claim (*see Pereira v New School,* 148 AD3d 410, 412 [1st Dept 2017]).  It governs "Slipping hazards" and provides as follows:

> "Employers shall not suffer or permit any employee to use a floor, passageway, walkway, scaffold, platform or other elevated working surface which is in a slippery condition. Ice, snow, water, grease and any other foreign substance which may cause slippery footing shall be removed, sanded, or covered to provide safe footing" (12 NYCRR 23-1.7 [d]).

First, it must be determined whether plaintiff's accident location was a floor, passageway, walkway, scaffold, platform or other elevated working surface.

Plaintiff sets forth caselaw supporting the position that railways (and parts thereof) constitute floors, passageways or walkways as contemplated by section 23-1.7 (d) (*see e.g. Burnett v City of New York*; 104 AD3d 437, 438 [1st Dept 2013]). Specifically, in *Burnett*, the plaintiff was injured while "removing wood shoring from beneath newly laid subway track" (*id.* at 438).  The court found that the "rail bed" (the groundwork on which track is laid) where he was working "constituted a floor, passageway or walkway within the meaning of the Industrial Code" (*id.* at 438).  Plaintiff then argues, essentially, that there is no material difference between the "rail bed" in *Burnett*, and the rail ties (which effectively lie on the rail bed) at issue herein.  This argument is persuasive.  Therefore, plaintiff has established, *prima facie,* that the track and the rail ties that comprise it are a floor, passageway or walkway for the purposes of section 23-1.7 (d).

In opposition, defendants fail to raise a question of fact on this issue.  Defendants cite to several cases that, they argue, establish that rail ties are not an enumerated surface.  However, these cases do not stand for that proposition.  Instead, they address whether an "open" area falls within the scope of the provision (*German v Antonio Dev. LLC,* 128 AD3d 579, 580 [1st Dept 2015] [section 23-1.7 (d) did not apply where the record established that the accident occurred "in an open courtyard"]; *Ponce v City of New York*, 217 AD3d 464 [1st Dept 2023] ["The location of plaintiff's fall, which he described as an open area" did not implicate section 23-1.7 (d)]).  Here, there is no

**152407/2021   PIZZOLA, ANTHONY vs. TUTOR PERINI CORPORATION**                        **Page 8 of 20**
**Motion No.  002 003**

8 of 20

testimony that the accident location – the rail ties between the rails, at a switch/junction – was an "open area," such that section 23-1.7 (d) would not apply.

Next, defendants rely on their expert's opinion that "[r]ail ties do not transform into floors, scaffolds, or platforms, because a worker is standing on them" (Peraza aff., ¶ 12), as evidence that the accident location does not fall within the scope of section 23-1.7 (d). However, an expert opinion as to a legal conclusion is impermissible (*see e.g. Russo v Feder, Kaszovitz, Isaacson, Weber, Skala & Bass, LLP,* 301 AD2d 63, 69 [1st Dept 2002]). Nor does it address whether accident location was an "open" area, as opposed to one of the section's enumerated areas.

In sum, plaintiff has supported and established that the subject accident location – the Ties on the railway – constitutes a floor, passageway or walkway. Therefore, section 23-1.7 (d) is applicable to his accident.

As to whether section 23-1.7 (d) was violated, plaintiff's testimony establishes that he was required to stand on the Ties to perform his work of manually switching the track (plaintiff's 50-h at 124 ["You have to stand on those platforms"]). He also established that the Ties were "very wet and slippery" (plaintiff's 50-h tr at 130). He further established that, while standing on the Ties, he lost his balance when the prybar he was using slipped, throwing him off balance, resulting in his feet slipping on the wet surface (*id.* at 140 ["When the bar slipped, it threw me backwards, and my feet slipped off that metal platform"]).

Plaintiff's testimony is supported by Roberts witness statement that plaintiff "slipped and fell backwards while pulling the switch" (plaintiff's notice of motion, exhibit L, p. 2; NYSCEF Doc. No. 73), the Five Star foreman's incident report which notes that plaintiff "slipped and landed on left wrist" (plaintiff's exhibit N at 2 [NYSCEF Doc. No. 75]); and the MTACC Report, which indicates that the cause of the accident was a "Humid/Slippery Surface" (plaintiff's exhibit L at 1 [NYSCEF Doc. No. 73]).

Accordingly, plaintiff has established, *prima facie*, that he slipped due to water that caused his work surface to be slippery, in violation of section 23-1.7 (d).

In opposition, defendants fail to raise a question of fact or establish that section 23-1.7 (d) does not apply. Specifically, defendants argue that the wet condition was integral to work being performed and cannot be considered a substance that would violate this provision (*see O'Sullivan v IDI Constr. Co., Inc.* 7 NY3d 805, 805 [2006]). This argument is unavailing, as the doctrine "only applies when the dangerous condition is inherent to the task at hand" (*Bazdaric v Almah Partners LLC*, 41 NY3d 310, 320 [2024]).

The cases relied on by defendants merely echo this standard (*Bond v York Hunter Constr., Inc.*, 270 AD2d 112 [1st Dept 2000] [fall on debris generated from "an ongoing demolition project"]; *Ghany v BC Tile Contractors, Inc.*, 95 AD3d 768 [1st Dept 2012] [fall over a small stone that "was either created during the delivery of the stones .

**152407/2021 PIZZOLA, ANTHONY vs. TUTOR PERINI CORPORATION**
**Motion No. 002 003**

**Page 9 of 20**

. . or when the larger stones were [cut] by plaintiff and his coworkers"]; *Cabrera v Sea Cliff Water Co.,* 6 AD3d 315, 316 [1st Dept 2004] [slip on sheetrock dust and sawdust that was the "inherent result of the cutting of the sheetrock and plywood" that plaintiff "and his coworkers had just created"]). Here, the wet condition was not caused by any ongoing construction work, nor was the wet condition the result of any actions taken by plaintiff or his coworker.

Finally, defendants argue that the wet condition was caused by a natural condition – humidity – and, therefore, cannot be considered an actionable foreign substance. This argument is unavailing, as the provision itself contemplates natural conditions – i.e. snow and ice. Defendants' reliance on *Knell v City of New York* (2013 NY Slip Op 30579[U] [Sup Ct, Queens County 2013]) is unpersuasive. In *Knell*, the slippery condition was caused by a rainstorm in progress creating slick surfaces on the entirety of the elevated train track. The plaintiff's job in *Knell* involved walking that track, performing maintenance work. Here, the issue is much narrower – a slippery condition at a specific location: inside a tunnel, on the Ties located at a manually operated switch where workers were required to stand to switch the track.

Given the foregoing, plaintiff has established that the Ties that he was required to stand on to perform his work was a platform as contemplated by section 23-1.7 (d). The Ties were not kept free from water, in violation of section 23-1.7 (d). Such water was a slippery condition that, at least in part, led to plaintiff's accident.

"[A] violation of section 241(6) is "'merely some evidence which the jury may consider on the question of defendant's negligence'" (*Rizzuto v L.A. Wenger Contr. Co.*, 91 NY2d 343, 349 [1998]). "[I]t is for the jury to determine whether the negligence of some party to, or participant in, the construction project caused plaintiff's injury" (*id.* at 350). That being said, the Appellate Division, First Department has consistently upheld summary judgment as to liability in the plaintiff's favor as to Labor Law § 241 (6) based on a finding, as a matter of law, of an Industrial Code violation (*see e.g. Favaloro v Port Authority of N.Y. & N.J.*, 191 AD3d 524 [1st Dept 2021]; *Stigall v State of N.Y.*, 189 AD3d 469 [1st Dept 2020]; *Anderson v MSG Holdings, L.P.*, 146 AD3d 401 [1st Dept 2017]). [2]

Given the foregoing, plaintiff is entitled to summary judgment in his favor on that part of his Labor Law § 241 (6) claim predicated upon a violation of Industrial Code 12 NYCRR 23-1.7 (d). Defendants are not entitled to summary judgment dismissing the same.

*Industrial Code 12 NYCRR 23-1.7 (e) (2)*

---

[2] Perhaps, it would be more accurate to say that the Industrial Code violations were established as a matter of law, rather than the "negligence of some party to, or participant in, the construction project" was established as a matter of law, based solely on the proof of the violations alone.

**152407/2021  PIZZOLA, ANTHONY vs. TUTOR PERINI CORPORATION**
**Motion No.  002 003**

**Page 10 of 20**

10 of 20

Industrial Code 12 NYCRR 23-1.7 (e) (2) is sufficiently specific to support a Labor Law § 241 (6) claim (*see Mendoza v Highpoint Assoc., IX, LLC*, 83 AD3d 1, 12 [1st Dept 2011]). It provides, in pertinent part, the following:

> "(e) Tripping and other hazards
>
> * * *
>
> "(2) Working areas. The parts of floors, platforms and similar areas where persons work or pass shall be kept free from accumulations of dirt and debris and from scattered tools and materials and from sharp projections insofar as may be consistent with the work being performed."

In support of dismissal of this claim, defendants argue that this provision is inapplicable because plaintiff does not allege that he tripped, only that he slipped. This argument is unavailing (*see DeMaria v RBNB 20 Owner, LLC,* 129 AD3d 623, 625 [1st Dept 2015] ["That plaintiff 'slipped,' rather than 'tripped," . . . does not render 12 NYCRR 23-1.7 (e) (2) ('Tripping and other hazards') inapplicable to [plaintiff's] case"]; *see also Serrano v Consolidated Edison Co. of N.Y. Inc.,* 146 AD3d 405, 406 [1st Dept 2017]; lv dismissed 29 NY3d 1118 [2017]).

That said, plaintiff alleges that his accident was caused, at least in part, by slipping on a wet surface condition created by humidity in the tunnel. Section 1.7 (e) (2) applies only to accumulations of dirt and debris, scattered tools and materials, and sharp projections. A wet surface is neither an accumulation of dirt or debris, scattered tools, or a sharp projection (*see e.g. Harasim v Eljin Constr. of N.Y. Inc.,* 106 AD3d 642, 642 [1st Dept 2013] [holding that a slippery condition was not dirt, debris, scattered tools or sharp projections and, therefore, section 1.7 (e) (2) was inapplicable]).

Accordingly, this provision is inapplicable to plaintiff's accident, and defendants are entitled to summary judgment dismissing plaintiff's Labor Law § 241 (6) claim predicated upon a violation of 12 NYCRR 23-1.7 (e) (2).

### The Labor Law § 240 (1) Claim (Motion Sequence Numbers 002 and 003)

Plaintiff moves for summary judgment in his favor on his Labor Law § 240 (1) claim as against defendants. Defendants move for summary judgment dismissing that claim.

Labor Law § 240 (1), known as the Scaffold Law, provides as relevant:

> "All contractors and owners and their agents . . . in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers,

**152407/2021 PIZZOLA, ANTHONY vs. TUTOR PERINI CORPORATION**
**Motion No. 002 003**

Page 11 of 20

11 of 20

blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed."

Labor Law § 240 (1) "imposes a nondelegable duty on owners and contractors to provide devices which shall be so constructed, placed and operated as to give proper protection to those individuals performing the work" (*Quiroz v Memorial Hosp. for Cancer & Allied Diseases*, 202 AD3d 601, 604 [1st Dept 2022] [internal quotation marks and citations omitted]). It "was designed to prevent those types of accidents in which the scaffold . . . or other protective device proved inadequate to shield the injured worker from harm directly flowing from the application of the force of gravity to an object or person" (*John v Baharestani*, 281 AD2d 114, 118 [1st Dept 2001], quoting *Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 501 [1993]).

> "The statute is violated when the plaintiff is exposed to an elevation-related risk while engaged in an activity covered by the statute and the defendant fails to provide a safety device adequate to protect the plaintiff against the elevation-related risk entailed in the activity or provides an inadequate one" (*Jones v 414 Equities LLC*, 57 AD3d 65, 69 [1st Dept 2008]; *see also O'Brien v Port Auth. of N.Y. & N.J.,* 29 NY3d 27, 33 [2017] [section 240 liability "is contingent upon the existence of a hazard contemplated in section 240(1) and the failure to use, or the inadequacy of, a safety device of the kind enumerated therein"]).

In addition, Labor Law § 240 (1) "must be liberally construed to accomplish the purpose for which it was framed" (*Valensisi v Greens at Half Hollow, LLC,* 33 AD3d 693, 695 [2d Dept 2006] [internal citations omitted]).

That said, not all workers injured at a construction site fall within the scope of protections of section 240 (1), and "a distinction must be made between those accidents caused by the failure to provide a safety device . . . and those caused by general hazards specific to a workplace" (*Makarius v Port Auth. of N.Y. & N. J.*, 76 AD3d 805, 807 [1st Dept 2010]; *Buckley v Columbia Grammar & Preparatory*, 44 AD3d 263, 267 [1st Dept 2007] [section 240 (1) "does not cover the type of ordinary and usual peril to which a worker is commonly exposed at a construction site"]). Instead, liability is "contingent upon the existence of a hazard contemplated in section 240 (1) and the failure to use, or the inadequacy of, a safety device of the kind enumerated therein" (*Nicometi v Vineyards of Fredonia, LLC*, 25 NY3d 90, 97 [2015], quoting *Narducci v Manhasset Bay Assoc.*, 96 NY2d 259, 267 [2001]).

Therefore, to prevail on a Labor Law § 240 (1) claim, a plaintiff must establish that the statute was violated, and that this violation was a proximate cause of the plaintiff's injuries (*Barreto v Metropolitan Transp. Auth.*, 25 NY3d 426, 433 [2015]).

**152407/2021   PIZZOLA, ANTHONY vs. TUTOR PERINI CORPORATION**
**Motion No.  002 003**

**Page 12 of 20**

12 of 20

Here, plaintiff was injured when, while standing on wet railroad Ties and applying force to a rail switch with a prybar, the prybar slipped, causing plaintiff to lose his balance and slip on a slick surface. The Ties were situated over a one-to-two-foot-deep gap below the tracks. During his fall, plaintiff's feet slipped between the Ties, dropping into the gap below.

Specifically, plaintiff testified that the prybar slipped, "violently throwing [him] backwards" (plaintiff's tr at 36; plaintiff's 50-h tr at 127 [the "amount of force that [was] stored up in [the prybar] threw [him] backwards"]). Corroborating this are several reports: the Foreman's Incident Report, noting that plaintiff "slipped and landed on left wrist" (Five Star Report, at 2), the MTACC Report's witness statement from the eyewitness Roberts who stated that plaintiff "slipped and fell backwards while pulling the switch" (MTACC Report, at 2), and plaintiff's own signed statement that "the bar slipped and threw [him] backward" (Terrier Report, at 2). According to plaintiff's testimony, it was *after* he was thrown backwards that his feet slipped into the gap between the Ties (*id.* at 140 ["When the bar slipped, it threw me backwards, and my feet slipped off" the Ties]).

Plaintiff argues that the one-to-two foot deep gap beneath the Ties constitutes an elevation related hazard contemplated by section 240 (1). He further argues that the Ties acted as a protective device and failed to afford sufficient protection to prevent plaintiff from falling (*see e.g. Becerra v City of New York,* 261 AD2d 188, 189 [1st Dept 1999] ["Although the unsecured boards supporting plaintiff . . . are described by the parties as a floor, they served, conceptually and functionally, as an elevated platform or scaffold"]; *DaSilva v Toll First Ave., LLC,* 199 AD3d 511 [1st Dept 2021]).

Defendants argue that the gap under the Ties did not expose plaintiff to the type of height-related dangers that Labor Law § 240 (1) protects against and, therefore, no safety device was necessary (*see e.g. Cappabianca v Skanska USA Bldg. Inc.*, 99 AD3d 139, 144 and 146 [1st Dept 2012] [slip causing the plaintiff's foot to "g[e]t caught" between pallet slats, leading to a fall from the pallet to the ground 12 inches below did not "expose[] [the plaintiff] to an elevation-related risk requiring protective safety equipment"]).

This case, therefore, hinges on whether the accident location – ground level railroad ties above a one-to-two foot deep gap – constitutes an elevation related hazard, such that a safety device would be required. Determining whether an accident location constituted an elevation risk is fact specific, as "[t]here is no bright-line minimum height differential that determines whether an elevation hazard exists" (*Auriemma v Biltmore Theatre, LLC*, 82 AD3d 1, 9 [1st Dept 2011] [internal quotation marks and citations omitted]).

In some instances, a short height differential of two feet to four feet has been found to constitute an elevation related hazard (*Megna v Tishman Constr. Corp. of Manhattan,* 306 AD2d 163, 164 [1st Dept 2003] [two foot fall from collapsed temporary stair leading to work area]; *Vurchio v Kalikow Lincoln Dev. Co.*, 187 AD2d 280 [1st Dept

**152407/2021   PIZZOLA, ANTHONY vs. TUTOR PERINI CORPORATION**
**Motion No.  002 003**

**Page 13 of 20**

1992] [fall from the top of a 30 inch high sawhorse that collapsed]; *Hoyos v NY-1095 Avenue of the Americas, LLC*, 156 AD3d 491, 393 [1st Dept 2017] [4-foot fall from unguarded loading dock]).

In other instances, a short height differential one foot or less has not constituted an elevation related hazard (*Sawczyszyn v New York* University, 158 AD3d 510, 511 [1st Dept 2018] [8 to 12 inch height differential "does not constitute a physically significant elevation differential"]; *Jackson v Hunter Roberts Constr. Group, LLC*, 161 AD3d 666, 667 [1st Dept 2018] ["The height differential of 6 to 10 inches . . . did not constitute a physically significant elevation differential"]; *DeStefano v Amtad New York, Inc.*, 269 AD2d 229, 229 [1st Dept 2000] [fall from 12 inch high ramp is not an elevation hazard]; *Rocovich v Consolidated Edison Co.*, 78 NY2d 509, 514-15 [1991] ["it is difficult to imagine how plaintiff's proximity to the 12-inch trough could have entailed an elevation-related risk which called for any of the protective devices of the types listed in section 240 (1)"]; *Cappabianca,* 99 AD3d at 146 [fall from pallet between 4 to 12 inches high did not fall within the scope of section 240 (1)]).

For a height differential between 12 inches to two feet, cases in the Appellate Division, First Department are split (*compare Arrasti v HRH Constr. LLC*, 60 AD3d 582, 583 [1st Dept 2009] [fall from an 18 inch high ramp that was sole access to work area]; *Brown v 44 St. Dev. LLC,* 137 AD3d 703, 703-704 [1st Dept 2016] [12 to 18 inch fall through rebar latticework while carrying planks] *with Torkel v NYU Hosps. Ctr.,* 63 AD3d 587, 590 [1st Dept 2009] [12 to 18 inch high ramp from the sidewalk curb to the street was not an elevation-related hazard]; *Fischer v VNO 225 W. 58th St. LLC*, 215 AD3d 486, 487 [1st Dept 2023] [fall from a distance of between 1½ to 2 feet off a platform did not constitute "a physically significant height elevation differential to trigger the protection of Labor Law § 240 (1)"]). The cases do not explain the rationale or articulate criteria that courts should apply to determine whether a height differential between 12 inches to 2 feet would present an elevation related risk.

Here, the evidence, coupled with relevant case law presented by the parties, supports the finding, as a matter of law, that the accident location did not constitute the type of elevation related risk contemplated by Labor Law § 240 (1).

On the one hand, plaintiff had testified at his statutory hearing that the gap beneath the Ties was "approximately a foot" deep (plaintiff's 50-h tr at 156), which would not be a significant height differential under *Rocovich, Sawczyzysn, Jackson,* and *DeStefano.* On the other hand, plaintiff testified at his deposition that "there was a drop on the top of the platform about one to two feet" (plaintiff's tr at 55, line 25 through 56, line 2), which might be a significant height differential under *Arrasti* and *Brown.*

In this court's view, even assuming that the height differential was between 1½ to 2 feet, the facts of this case are closer to *Cappabianca*, *supra*, than *Brown.* In *Cappabianca*, the plaintiff was required to work on a pallet "anywhere from 4 to 12 inches high," "composed of slats positioned about three to six inches apart (99 AD3d at 142). The pallet shifted while he was on it due to water accumulating on the floor

**152407/2021   PIZZOLA, ANTHONY vs. TUTOR PERINI CORPORATION**                    **Page 14 of 20**
**Motion No.  002 003**

14 of 20

[* 14]

underneath the pallet, causing the plaintiff to lose his balance. As a result, "[h]is left foot got caught between pallet slats and he fell to the floor" (*id.* at 143). The court ruled that, because plaintiff "was at most 12 inches above the floor," "he was not exposed to an elevation-related risk requiring protective safety equipment" (*id.* at 146). Here, like the slats on the pallet in *Cappabianca*, plaintiff slipped while standing on the Ties, which were situated at ground level, but which were above a one-to-two foot gap.

By contrast, in *Brown*, the plaintiff was walking on a latticework rebar deck, and the rebars "were approximately 12 inches apart, and each rebar was 5/8 to 3/4 of an inch" (*Brown v 44th St. Dev., LLC*, 48 Misc 3d 234, 237 [Sup Ct, NY County 2015], *affd* 137 AD3d 703). Unlike *Brown*, the Ties here were spaced "approximately eight to ten inches" apart (plaintiff's tr. at 129), and the Ties are much wider than the rebar, as is apparent in the photographs (*see* plaintiff's exhibit K [NYSCEF Doc. No. 119]). Plaintiff here is not performing the kind of high-wire balancing act that the plaintiff had to perform in *Brown* to keep from falling into the openings of the latticework rebar deck.

The facts in *Jackson* (161 AD3d at 666), raised by defendants in their supplemental briefing, further support this determination. In *Jackson*, the plaintiff "lost his balance" while walking up a six-to-ten-inch high ramp because the ramp flexed underneath him (*id.* at 667). This caused the plaintiff to drop heavy material that then struck and injured him. The court held that the ramp's height "did not constitute a physically significant elevation covered by the statute" (*id.* at 667) and further noted that "the impetus" of the accident "was plaintiff's loss of balance, rather than the direct consequence of the force of gravity" (*id.* at 667). In addition, the court determined that the ramp "serv[ed] as a passageway, as opposed to the 'functional equivalent' of a safety device enumerated under the statute" and, therefore, it did not fall within the scope of section 240 (1) (*id.* at 667).

Here, similar to *Jackson*, the "impetus" of plaintiff's accident was not the direct consequence of the force of gravity, but rather plaintiff was "violently throw[n] backwards" (i.e., not a downward force), when the prybar slipped (plaintiff's tr at 36; plaintiff's 50-h tr at 127).

It is for this reason that *Carpio v Tishman Constr. Corp. of N.Y.* (240 AD2d 234 [1st Dept 1997]), as relied upon by plaintiff, is unpersuasive. *Carpio* involved a worker who, while looking upwards to perform his work, stepped backwards into an uncovered hole and fell partway through it, to the three-foot deep subfloor below. The cause of the accident in *Carpio* was not a loss of balance, but the direct consequence of gravity acting on the plaintiff as he stepped into an uncovered hole. Here, as discussed above, plaintiff's testimony does not support the contention that plaintiff's fall occurred when he stepped into the gap between the Ties. Rather, it supports that his fall happened when he was "violently throw[n] backwards" (plaintiff's tr at 36; plaintiff's 50-h tr at 127).

Thus, the court concludes that plaintiff was not exposed to the type of elevation related risk that requires protective safety devices.

**152407/2021  PIZZOLA, ANTHONY vs. TUTOR PERINI CORPORATION**
**Motion No. 002 003**

Page 15 of 20

15 of 20

The remaining cases raised by plaintiff in his supplemental briefing also do not alter the court's determination. For example, plaintiff relies on *Dominguez v Lafayette-Boynton Hous. Corp.* (240 AD2d 310 [1st Dept 1997]) for the proposition that section 240 (1) can apply even where there is no height differential at all. However, *Dominguez* does not stand for that proposition.

In *Dominguez,* the plaintiff's work area was the exterior of the 19th floor of a building, which was accessible only by a motorized hanging scaffold. While the plaintiff was "5 stories high" and "attempting to gain access to a work site on the 19th floor" the scaffold itself had to be manuevered around air conditioning units protruding from the building, by pushing the scaffold outward three feet and using the scaffold motor to propel the scaffold around and above the air conditioners (*id.* at 311). Although plaintiff and his co-worker had successfully accomplished the maneuver twice before, when they attempted it a third time, the scaffold, which was weighted with bricks and cement, "swung back precipitously and smashed into the air conditioner, causing injuries to the plaintiff's wrist" (*id.* at 311).

The plaintiff in *Dominguez* was unquestionably exposed to an elevation related risk, for he was working 19 stories above ground level on a motorized scaffold. The *Dominguez* court found that the scaffold was insufficient to provide proper protection because maneuvering the scaffold around the air conditioner caused the scaffold to swing and smash into the air conditioner due to the effects of gravity, and "the scaffold was not equipped with sufficient devices to prevent these injuries"(*id.* at 313).

Here, the Ties were located at surface level. Plaintiff's work was also located at surface level. In addition, the Ties were a structural component of the rail track and were not provided for the purpose of reaching an elevated work surface, such that they could be considered the functional equivalent of a safety device (*Jackson,* 161 AD3d at 667). Accordingly, *Dominguez* is inapposite to the facts at hand.

In addition, there is no testimony that plaintiff's accident was caused because the Ties shifted, moved, or collapsed. Therefore, *Interiano v Silverstein Galaxy Property Owner, LLC* (—AD3d—, 2025 NY Slip Op 00159 [1st Dept 2025] [fall on a scaffold caused by shifting/swaying of scaffold due to high wind]), *Ciaurella v Trustees of Columbia Univ. in the City of N.Y.* (228 AD3d 555 [1st Dept 2024] [fall through hole caused by floor collapse]) and *Becerra v City of New York* (261 AD2d 188 [1st Dept 1999] [fall caused by shifting unsecured scaffold boards]) are inapposite.

*Pipia v Turner Constr. Co* (114 AD3d 424 [1st Dept 2014]) and *York v Tappan Zee Constructors, LLC* (224 AD3d 527 [1st Dept 2024]), both cited by plaintiff, are also inapposite. Both cases involved injuries arising from "struggle[s] to avoid the elevation-related risk of falling into the water" from a height (*York*, 224 AD3d at 528). There was no dispute that the plaintiffs in *Pipia* and *York* faced an elevation-related risk posed by difference between the level of the plaintiffs and the bottom of the body of water upon which they worked (*Dooley v Peerless Importers, Inc.*, 42 AD3d 199, 204 [2d Dept 2007]). Struggling to avoid a fall from an insignificant height differential would no more

**152407/2021   PIZZOLA, ANTHONY vs. TUTOR PERINI CORPORATION**                    **Page 16 of 20**
**Motion No.  002 003**

be covered under Labor Law § 240 (1) than if a plaintiff had actually fallen from an insignificant height.

Plaintiffs' argument that he was exposed to an elevation-related risk implicates the Court of Appeals's concern in *Rocovich* that adopting an interpretation of Labor Law § 240 (1) that

> "would have the effect of making Labor Law § 241 (6)--the general provision requiring owners and contractors to provide safe working conditions--virtually useless. Cases involving injuries due to allegedly dangerous working conditions, such as plaintiff's--which are now governed by section 241 (6) -- would properly be brought under the far more stringent provisions of section 240 (1) where absolute liability could result" (*Rocovich*, 78 NY2d at 515).

Given the foregoing, defendants have established that the accident did not involve the type of elevation-related risks contemplated by Labor Law § 240 (1). Accordingly, section 240 (1) does not apply to plaintiff's accident and defendants are entitled to summary judgment dismissing said claim as against them. The branch of plaintiff's motion for partial summary judgment in his favor against defendants as to liability under Labor Law § 240 (1) is denied.

### The Common-Law Negligence and Labor Law § 200 Claims (Motion Sequence Number 003)

Defendants move for summary judgment dismissing the common-law negligence and Labor Law § 200 claims against them.

Labor Law § 200 "is a codification of the common-law duty imposed upon an owner or general contractor to provide construction site workers with a safe place to work" (*Singh v Black Diamonds LLC*, 24 AD3d 138, 139 [1st Dept 2005], citing *Comes v New York State Elec. & Gas Corp.*, 82 NY2d 876, 877 [1993]). Labor Law § 200 (1) states, in pertinent part, as follows:

> "All places to which this chapter applies shall be so constructed, equipped, arranged, operated and conducted as to provide reasonable and adequate protection to the lives, health and safety of all persons employed therein or lawfully frequenting such places. All machinery, equipment, and devices in such places shall be so placed, operated, guarded, and lighted as to provide reasonable and adequate protection to all such persons."

There are two distinct standards applicable to section 200 cases, depending on the situation involved: (1) when the accident is the result of the means and methods

**152407/2021   PIZZOLA, ANTHONY vs. TUTOR PERINI CORPORATION**
**Motion No.  002 003**

Page 17 of 20

17 of 20

[* 17]

used by a contractor to do its work, and (2) when the accident is the result of a dangerous condition that is inherent in the premises (*see Cappabianca*, 99 AD3d at 144; [1st Dept 2012]; *McLeod v Corporation of Presiding Bishop of Church of Jesus Christ of Latter Day Sts.,* 41 AD3d 796, 797-798 [2d Dept 2007]).

Here, the accident occurred, at least in part, due to a slippery surface on the ground where plaintiff was required to work. It also occurred due to the nature of the work he was performing – using a prybar to manually switch the rail. Accordingly, the accident implicates both theories of the means and methods of the work and a dangerous condition at the work site (*see e.g. Moore v URS Corp.*, 209 AD3d 438, 440 [1st Dept 2022]; *Rosa v 47 E. 34th St. (NY), L.P.*, 208 AD3d 1075 [1st Dept 2022]).

*Means and methods*

"Where a plaintiff's claims implicate the means and methods of the work, an owner or a contractor will not be held liable under Labor Law § 200 unless it had the authority to supervise or control the performance of the work"(*LaRosa v Internap Network Servs. Corp.*, 83 AD3d 905, 909 [2d Dept 2011]; *DaSilva v Toll First Ave., LLC,* 199 AD3d 511, 513 [1st Dept 2021]; *Andino v Wizards Studios N. Inc.*, 223 AD3d 508, 509 [1st Dept 2024]).

Defendants argue that they did not actually supervise or control the injury producing work – the method of switching the rail. In support of their position, defendants rely on plaintiff's own testimony that he only received supervision from Five Star's employees (plaintiff's tr at 65 [stating that he was instructed by "a foreman, and [his] partner"]; plaintiff's 50-h tr at 161-162 [denying supervision by MTACCC, Metro-North, MTA and NYCTA]); and Schwing's testimony that Tutor Perini did not instruct Five Star on how to use prybars to switch rails, as that responsibility lied with "whichever foreman or tradesman did the work" (Schwing tr at 17).

There is no evidence in the record that any of the defendants actually supervised the injury producing work – i.e. plaintiff's manual switching of the rails. Plaintiff's argument that Tutor Perini actually directed such work is based on plaintiff's testimony that Roberts, his coworker, "might have gotten some messages from [a Tutor supervisor]" about "what [his] assignments were" (plaintiff's 50-h tr at 68). This statement implicates, at best, a general supervisory authority to direct workers on where to perform their work, not how to perform that work. Such general supervisory authority is insufficient to establish liability under section 200 (see *Bisram v Long Is. Jewish Hosp.*, 116 AD3d 475, 476 [1st Dept 2014] [where a contractor "may have coordinated the subcontractors at the work site or told them where to work on a given day, and had the authority to review onsite safety . . . those responsibilities do not rise to the level of supervision or control necessary to hold the [contractor] liable for plaintiff's injuries under Labor Law § 200"]).

Given the foregoing, defendants have established that they did not supervise or control the means and methods of the work. Accordingly, they are entitled to summary

**152407/2021   PIZZOLA, ANTHONY vs. TUTOR PERINI CORPORATION**
**Motion No.  002 003**

Page 18 of 20

[* 18]

judgment dismissing that part of the common-law negligence and Labor Law § 200 claims that are predicated upon this theory.

*Hazardous Condition*

Where an injury stems from a dangerous condition on the premises, an owner may be liable in common-law negligence and under Labor Law § 200 "'when the owner created the dangerous condition causing an injury or when the owner failed to remedy a dangerous or defective condition of which he or she had actual or constructive notice'" (*Mendoza v Highpoint Assoc., IX, LLC*, 83 AD3d 1, 9 [1st Dept 2011], quoting *Chowdhury v Rodriguez*, 57 AD3d 121, 128 [2d Dept 2008]).

Here, the subject hazardous condition was a recurring condition of moisture causing slick surfaces in the tunnels. Defendants argue that they had no notice, actual or constructive, of the moisture and, even if they did, the hazard was inherent to plaintiff's work. In opposition, plaintiff argues that defendants had actual and constructive notice of the condition, as there were prior complaints of the problem and a known solution (increased ventilation).

A defendant is charged with constructive notice of a defective or hazardous condition when that condition is visible, apparent, and exists for a sufficient length of time prior to the happening of an accident to permit the defendant to discover and remedy the same (*Gordon v American Museum of Natural History*, 67 NY2d 836, 837 [1986]). The notice required must be more than general notice of a defective condition (*id*. at 838). Instead, notice of the specific condition at the specific location is required. Therefore, a "'general awareness' that a dangerous condition may be present" is insufficient to constitute notice of the specific condition that caused the accident (*Marte v Tishman Constr. Corp.*, 223 AD3d 527, 528 [1st Dept 2024]; quoting *Piacquadio v Recine Realty Corp,* 84 NY2d 967, 969 [1994]).

That said, "a defendant may be charged with constructive notice of a hazardous condition if it is proven that the condition is one that recurs and about which the defendant has actual notice" (*Early v Hilton Hotels Corp.*, 73 AD3d 559, 561 [1st Dept 2010] [internal citations omitted]).

The record does not support a claim that defendants had actual knowledge of the subject slippery condition, as the record does not contain any testimony that defendants were ever made aware of that specific condition. Nor does the record establish any constructive notice of the condition – recurring or otherwise.

Plaintiff argues that sufficient evidence of constructive notice of a recurring condition exists to raise a question of fact on this issue. In support of this assertion, plaintiff relies on his own testimony that the wet conditions on the rails were discussed at safety meetings. However, according to that testimony, the safety meetings were run by Galante, Five Star's foreman (plaintiff's tr at 132-133). There is no testimony supporting that any defendant entity was present at such meetings, such that notice

**152407/2021   PIZZOLA, ANTHONY vs. TUTOR PERINI CORPORATION**
**Motion No.  002 003**

Page 19 of 20

19 of 20

could be attributed to them. Notably, Schwing (Tutor Perini's project manager) was never asked about his awareness of wet conditions at rail switches. Finally, the evidence regarding post-accident remediation found in the accident reports is inadmissible and cannot raise a question of fact with respect to notice (*Poplawski v 111 Wall Street LLC*, 211 AD3d 593, 593 [1st Dept 2022]).

Accordingly, as the record reflects that defendants did not create or have notice of the subject condition, defendants are entitled to summary judgment dismissing the common-law negligence and Labor Law § 200 claims against them.

The parties' remaining arguments have been considered and were unavailing.

## CONCLUSION AND ORDER

For the foregoing reasons, it is hereby

**ORDERED** that the motion of plaintiff Anthony Pizzola (Seq. No. 002), pursuant to CPLR 3212, for summary judgment in his favor as to liability on his Labor Law §§ 240 (1) and 241 (6) claims against defendants Tutor Perini Corporation, MTA Capital Construction Company, Metropolitan Transportation Authority (MTA), New York City Transit Authority, Metro-North Commuter Rail Road Company s/h/a Metro-North Commuter Railroad and The Long Island Rail Road Company s/h/a Long Island Rail Road is **GRANTED IN PART TO THE EXTENT THAT** plaintiff is granted partial summary judgment in his favor against defendants with respect to the Labor Law § 241 (6) claim predicated upon a violation of Industrial Code 12 NYCRR 23-1.7 (d), and the motion is otherwise denied; and it is further

**ORDERED** that defendants' motion (Seq. No. 003), pursuant to CPLR 3212, for summary judgment dismissing the complaint is **GRANTED IN PART TO THE EXTENT** that the common law negligence and Labor Law §§ 200 and 240 (1) claims are dismissed, and all Labor Law § 241 (6) claims predicated upon violations of OSHA regulations and violations of the Industrial Code other than 12 NYCRR 23-1.7 (d) are dismissed.

This constitutes the decision and order of the court.

20250226164008RTSAIFA2680FB8B214834800AC50ECDF24AB9

| **2/26/2025** | | | | |
|---|---|---|---|---|
| **DATE** | | | **RICHARD TSAI, J.S.C.** | |

| CHECK ONE: | | CASE DISPOSED | X | NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|
| Motion Seq. No. 002 | | GRANTED | | DENIED | X | GRANTED IN PART | | OTHER |
| Motion Seq. No. 003 | | GRANTED | | DENIED | X | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | | REFERENCE |

**152407/2021   PIZZOLA, ANTHONY vs. TUTOR PERINI CORPORATION**                    **Page 20 of 20**
**Motion No.  002 003**

20 of 20

[* 20]